## AQUILLA H. PICKERING *et al.*

*v.*

## HENRY CEASE.

OPTIONAL CONTRACTS. A contract for the sale and future delivery of grain, by which the seller has the privilege of delivering or not delivering, and the buyer the privilege of calling or not calling for the grain, just as they chose, and which, on its maturity, is to be filled by adjusting the differences in the market value, is but an optional contract in the most objectionable sense, and, being in the nature of a gambling transaction, the law will not tolerate it.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Messrs. WILKINSON, SACKETT & BEAN, for the appellants.

Messrs. McCAGG & CULVER, for the appellee.

Opinion of the Court.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the Court:

This controversy arises out of grain transactions between the parties, about which there does not seem to be any serious misunderstanding, except as to two "optional deals" in corn, one for 10,000 bushels, for delivery in August, and another for a like amount, for delivery in September. An amount was admitted to be due on former transactions, for which the court rendered judgment in favor of plaintiffs and against defendant Cease, who was the only defendant served with process. Plaintiffs claimed that a larger sum was due on the previous transactions, but the amount was not considerable, and probably the sum found by the court is nearly, if not entirely, correct. That, however, is not the matter in dispute. It has relation only to the last two transactions in corn, and it is in regard to those items that plaintiffs bring the case to this court on appeal.

Upon the theory, plaintiffs made purchases for defendants, of corn, for August and September delivery, still, in view of the evidence, the judgment is quite as large as it ought to be. Had plaintiffs sold the corn at the highest market price after the alleged purchases, there would have been but little, if any, loss sustained. Whether they were directed so to do by defendants, was a question of fact to be found by the court to whom the cause was submitted. On this question, the testimony was flatly contradictory. If the court adopted the theory of defendants, the judgment is warranted by the evidence. Clearly it was the province of the court to determine which was the better evidence on that question, and we see no reason to be dissatisfied with the conclusion reached.

But there is another consideration that is fatal to a recovery in any event, so far as the two last deals are concerned. There is no sufficient evidence that any grain was, in fact, bought for defendants for delivery in August or September. So far as anything is proven, the alleged purchases are purely

fictitious. The grain plaintiffs bought of Hutchinson was immediately sold back to him. It was not paid for, nor was it expected by the parties it would be called for or delivered. The parties were merely speculating in differences as to the market values of grain on the Chicago market. Such contracts are void at common law, as being inhibited by a sound public morality. They were in no just sense contracts with the privilege of the seller to deliver at a future day. Time contracts are of daily occurrence, and must, of necessity, be, in commercial transactions.

Agreements for the future delivery of grain, or any other commodity, are not prohibited by the common law, nor by any statute of this State, nor by any policy adopted for the protection of the public. What the law does prohibit, and what is deemed detrimental to the general welfare, is speculating in differences in market values. The alleged contracts for August and September come within this definition. No grain was ever bought and paid for, nor do we think it was ever expected any would be called for, or that any would have been delivered had demand been made. What were these but "optional contracts," in the most objectionable sense; that is, the seller had the privilege of delivering or not delivering, and the buyer the privilege of calling or not calling for the grain, just as they chose. On the maturity of the contracts, they were to be filled by adjusting the differences in the market values. Being in the nature of gambling transactions, the law will tolerate no such contracts.

The judgment is for quite as much as it ought to be, under the evidence, and will be affirmed.

*Judgment affirmed.*