THOMPSON BROTHERS *et al. vs.* CUMMINGS & COMPANY.

1. The sale of cotton to be delivered at a future day, where both parties are aware that the seller himself expects to purchase to fulfill his contract, and no skill and labor or expense enter into the consideration, but the same is a pure speculation upon chances, is contrary to the policy of the law, and can be enforced by neither party. But where such a contract is executed, an agent who may be employed by his principal to make the contract can recover from him any money advanced in the transaction by his authority.

(*a*.) C. & Co., dealt in cotton futures during the day, received and posted telegrams stating the price of cotton, and required trades based on such telegrams to be made within ten minutes after such posting. At night they would buy or sell futures in their own names in New York, so as to cover the transactions of the day. T. Bros. bought futures of them, and they covered themselves as usual that night:

*Held,* that they were not the agents of T. Bros. but principals in the transaction.

2. No court will lend its aid to either party engaging in an illegal or immoral act. Therefore, he who deposits "margins" in the purchase of cotton futures cannot recover them by set off or otherwise.

Contracts: Cotton Futures. Principal and Agent. Actions. Before Judge STEWART. Newton Superior Court. March Term, 1881.

Reported in the decision.

A. B. SIMMS, for plaintiffs in error.

CLARK & PACE, for defendants.

CRAWFORD; Justice.

This suit originated on a sight draft for $364.95, drawn by Thompson Bros., on Swann & Stewart, December 12th, 1879, which they refused to pay, and Cummings & Co. sued them and Thompson Bros., the drawers.

The defence set up to this suit was—

(1.) That the draft was drawn to pay the losses upon the purchase of cotton "futures" from the plaintiffs, both parties knowing that there was no cotton held by either, and that the same was nothing but a mere speculation upon chances.

(2.) Defendants further pleaded that the plaintiffs received and were indebted to the drawers the sum of $478.76, which they had put up as a margin in the hands of the plaintiffs to cover losses in the event of a decline in the price of cotton.

(3.) That John T. Thompson, the drawer of the draft sued upon, was intoxicated when the same was drawn, and that the said intoxication was procured by the plaintiffs.

It was also claimed on the argument that a plea of duress had been pleaded, but as none such as can be so held appears in the record, it cannot be considered.

Under the testimony and charge of the court the jury found a verdict for the plaintiffs for the full amount of their draft. The defendants claimed that they found contrary to evidence and contrary to law, and that they were therefore entitled to a new trial, which the court refused, and they excepted.

Whether this verdict was right or wrong, must be determined by the evidence.

1. The sale of cotton to be delivered at a future day, where both parties are aware that the seller expects to purchase himself to fulfill his contract, and no skill and labor or expense enters into the consideration, but the same is a pure speculation upon chances, is contrary to the policy of the law, and can be enforced by neither party. But where such a contract is executed, an agent who may be employed by his principal to make the contract, can recover from him any money he may have advanced in the transaction by his authority. 45 *Ga.*, 501. Code, §2638.

That this was a transaction in what is known as "cotton futures" seems to be admitted; and besides, that as between the buyer and the seller, the law is settled that the whole contract would be void. This then leaves the naked question to be decided by the jury, were Cummings & Co. the agents or the principals in the transaction?

The defendant, J. T. Thompson, a member of the firm of Thompson Bros., testifies that he was the purchaser of the "cotton futures," and bought them directly from Cummings & Co., and that they were not his agents to buy from others. That he bought from telegrams that were posted every hour on a blackboard in their office. That both himself and Cummings & Co. knew that there was no cotton held by either, that it was a speculation upon the price of cotton in the future. That he never expected any cotton to be delivered. That whenever a telegram was posted, they would say that customers must trade in ten minutes, or not at all, on that telegram.

H. E. Cummings, one of the plaintiffs, testified : " That in trading or selling futures in cotton J. F. Cummings & Co. required their customers to pay so much money on each bale as a margin, and if the cotton declined at any time after the contract or sale, sufficient to exhaust the margin, the contract was ended. * * * Their rule was to sell to customers during the day ; and at night they would themselves purchase in New York to cover sales. * * * When they purchased cotton in New York through Lathrop & Co., they did so in their own name, they never purchased any cotton for Thompson Bros. in New York, but thinks that night they purchased a lot of five or six hundred bales of futures. * * * They did not buy any futures in the name of Thompson Bros. Futures were bought in New York by them in their own names by their agents, Lathrop & Co., to cover their operations with their customers."

The foregoing testimony, without anything more, makes Cummings & Co. the sellers, Thompson Bros. the buyers, and no agency about the whole transaction, except that of Lathrop & Co., who bought for Cummings & Co. to cover " their operations with their customers." As we construe the evidence in this record, Cummings & Co. first sold on their own account, and then bought or not to cover their sales, as they thought it necessary. Witness Cummings says that " they did not buy immediately that their customers bought from them, nor did they sell at the time their customers closed out." We cannot, in any view, see any thing else in this whole testimony, but that they were themselves the dealers in these speculations upon chance ; and if such is the fact, they cannot enforce this contract. That witness says that they were the agents of Thompson Bros., is but a conclusion of his, and is inconsistent with the facts detailed. But further, it nowhere appears that the $364.95 was ever advanced or paid out to any one on account of Thompson Bros., which must be shown to entitle them to recover, when the *prima*

*facie* case made by tendering the draft in evidence is over-come.

2. The second matter of defence to be ruled is as to the indebtedness of the plaintiffs to the defendants for the sum of $478.76, which had been put up as a "margin" to cover losses in the event of a decline in the price of cotton.

We hold that the defendants are not entitled to have this sum set off against the plaintiffs' claim, if it is recoverable, any more than he would be entitled to recover it in an original suit. Where parties engage in illegal trans-actions, the courts will not interpose to grant any relief. The principle of public policy is, that no court will lend its aid to a man upon an illegal or an immoral act, but will leave the parties where it finds them, no matter how the illegality of the contract may be brought before it, whether by direct suit or by way of set-off. 3 *Ga.*, 182; 11 *Ib.*, 547; 21 *Ib.*, 46; 41 *Ib.*, 315.

3. Upon the third plea, the jury having found with the plaintiffs, and no question of law being involved therein, it is unnecessary to consider of it further.

Judgment reversed.