## Lowe Bros. & Co. v. Young.

1. **Evidence:** RECEIPT: EXPLAINED BY PAROL. A writing which is both a receipt and a contract may, so far as it is a receipt, be explained by parol testimony.

2. **Practice:** EXAMINATION OF WITNESSES: DISCRETION OF COURT. The latitude to be allowed in the examination of witnesses depends largely on the circumstances of the case and rests, to some extent at least, in the discretion of the court. In this case, where the witness introduced by plaintiff indicated a strong purpose to sustain the validity of the transaction on which plaintiff relied, *held* no error to allow great latitude in cross-examination.

3. **Contract:** ILLEGAL CONSIDERATION: GAMBLING ON BOARD OF TRADE. The court instructed the jury in substance that the plaintiffs could not establish title to the corn in suit through the receipts in question, if they were issued to pay losses which the maker of the receipts might suffer in the purchase and sale of commodities, wherein it was not the purpose, intention or expectation of either of the parties that such purchases or sales should be actually consummated by delivery or receipt of the thing purchased or sold, but, on the contrary, it was the purpose of all the parties that the same should be settled by the payment of the difference between the purchase or selling price and the market price at the time of settlement, and that the receipts, if so issued, were void; *held*, correct, and in accord with *Pixley v. Boynton*, 79 Ill., 351.

4. **Evidence:** INTENTION PROVED BY CONDUCT. Where the question was whether or not certain transactions between the parties were intended by them to be in the nature of gambling: *held*, that the jury was authorized to find the *intention* of the parties by the course of dealing between them.

*Appeal from Benton District Court.*

FRIDAY, SEPTEMBER 22.

THE plaintiffs bring this action for the alleged conversion by the defendant of nearly thirteen thousand bushels of corn, which the plaintiffs claim they purchased from one J. C. Pike. The plaintiffs base their title to the grain upon certain receipts which are claimed to be warehouse receipts. The defendant denies generally the allegations of the petition and alleges that the grain in question was purchased in his name, with money furnished by him to Pike. The answer

further alleges, among other things, that the instruments in question were made by Pike to the plaintiffs pursuant to the mutual understanding and purpose that they should effect and evidence a mere lien upon the corn to secure four promissory notes for $1,000 each, made contemporaneously with the instruments, and that the notes and the receipts to secure them were given for loans already made, and to cover losses that should thereafter be sustained by Pike in various gambling transactions in various commodities, which the plaintiffs had carried on, and were to carry on, for said Pike, in the city of Chicago. The jury returned a general verdict for the defendant, and also found specially that the transactions upon the board of trade of Chicago, by plaintiffs, for J. C. Pike, were gambling transactions. The motion for new trial was overruled, and judgment was rendered for the defendant for costs. The plaintiffs appeal.

*Nicholls & Burnham*, for appellants.

*Gilchrist & Haines*, for appellee.

DAY, J.—I. The plaintiffs claim the title to the grain in question under four papers claimed to be warehouse receipts. Two of these papers are as follows:

"VINTON, IOWA, April 26, 1880.

"I have this day received and agree to hold possession of, as the agent of Lowe Bros. & Co., of Chicago, Illinois, five thousand bushels of No. 2 corn, which is stored in my cribs on lot number 2, the cribs being marked with Lowe Bros. & Co., and to be shipped to them or their order, before August 1, 1880. And I agree to keep said cribs in good repair, and to notify Lowe Bros. & Co., immediately of any damage to or interference with said corn. For all of which service I have received full compensation.          J. C. PIKE."

The other two papers are identical with the above, except that they are dated July 2, 1880, and specify that the corn shall be shipped during the month of August. The plaintiffs introduced J. C. Pike and proved by him that the body

of the instruments are not in his handwriting, but that the signatures are his. The instruments were then read in evidence. The plaintiffs then recalled Pike, who testified in substance that he owned the cribs in which the corn was stored, and the premises upon which they were situated; that there were about 20,000 bushels of corn in the cribs when the April receipts were executed, and the same quantity when the July receipts were executed; that he shipped about 7,000 or 8,000 bushels to plaintiffs, and left the balance in the possession of one Westcutt, with the directions to shell and ship to the plaintiffs.

Upon cross examination Pike stated, without objection, that at the time he executed the receipts he was the owner of the corn; that he was owing Lowe Bros. & Co. some, and wanted some money, and he asked them by letter if they could use those receipts, and they replied they could, and they were executed and delivered to them. He was then asked to state all about the circumstances under which the receipts and notes were executed. This question was objected to as not being cross-examination, and as incompetent, the receipts being the best evidence. The objection was overruled, and the witness in answer to this and other questions, also objected to, testified substantially as follows: "I think that when I spoke to Lowe Bros. & Co. about these receipts, and asked them if they could use them, they said they could, and the receipts were signed and delivered. There was no particular arrangement about the price of the corn, only as it was computed by the amount of money and the amount of corn. I sent some of the corn to Lowe Bros. & Co. that was in the cribs at the time I executed the receipts to them, and they sent me returns for it, and gave me credit for it. They never actually paid me any money on this corn that I remember. I was indebted to them at that time. I can't remember how much. They never demanded security of me before that time, and don't know that they desired it. The way they came to send me the receipts was that I asked them if they could use the receipts for what I was indebted to them,

and I wanted some money. The notes were given for the money and indebtedness. The indebtedness for which the receipts were given was for losses made in option dealings in Chicago. The notes, together with crib receipts, so far as they secured the notes, were given to secure Lowe Bros. & Co. for moneys that they should advance for me in option deals in Chicago. The indebtedness was made on what purported to be, on the face of them, sales and purchases of various commodities on the board of trade. In the class of contracts, which purport to have been made, the property was bought or sold for future delivery. When I sold property, none of the property sold was ever offered or tendered, that I know of." The plaintiffs objected to all of this testimony on the ground above stated.

1. The plaintiffs evidently introduced the receipts for the purpose of establishing the allegations in the petition, that they owned the corn in question. Whether they did own it or not depends upon the nature of the transactions evidenced in part by the receipts. It is clear that the transactions may have been attended with such circumstances as to render them invalid. The receipts merely indicate that Pike held the amount of grain referred to, as the agent of the plaintiffs, and agreed to ship it to them. The receipts do not disclose the circumstances under which the grain was received. It is proper to establish these circumstances in order to determine the true character of the transaction. A receipt is always susceptible of explanation.

*1. EVIDENCE: receipt: explained by parol.*

In so far as the receipt partakes of the nature of a contract to ship the grain, the evidence offered does not vary or contradict it. The testimony introduced violates no rule of evidence. It was therefore competent.

2. It depends largely upon the circumstances of the case, and rested, to some extent, at least, in the discretion of the court, whether it was proper to introduce this testimony by the cross-examination of Pike. The plaintiffs complain that the testimony was drawn

*2. PRACTICE: examination of witnesses: discretion of court.*

Lowe Bros. & Co. v. Young.

from Pike upon cross-examination and in answer to leading questions. But Pike was introduced as a witness by the plaintiffs. They had conducted a number of transactions for him, as members of the board of trade of Chicago, and his testimony taken all together indicates a strong purpose to sustain the validity of the transaction with them which is now in question. Under such circumstances the court may properly allow great latitude in examination. Under the circumstances we think the court did not commit any substantial error in allowing this testimony to be introduced by way of cross-examination.

II. Appellants assign as error the giving of the following instructions:

"9. Hence if you believe from evidence that J. C. Pike, for the purpose of raising in advance, by way of credit with plaintiffs, money with which to pay losses said Pike might in the future suffer in the purchase and sale of grain and other commodities, made with or through plaintiffs, wherein it was not the purpose, intention or expectation of either of the parties to such purchase or sale that such purchases or sales should be actually carried out or consummated by actual delivery or receipt of the thing purchased or sold; but, on the contrary, if it was the purpose of all the parties thereto that the same should and would be settled and adjusted by the payment of the difference between the purchase or selling price and the market price at the time of settlement, executed and delivered said written instruments in evidence, and dated respectively April 26, 1880, and July 2, 1880, then you are instructed that, though said money so raised by said Pike was by plaintiffs actually used in settling and adjusting or closing out such purchases and sales, said instruments are void, and plaintiffs cannot, through them, establish title to corn therein mentioned, and cannot recover in this action, and your verdict will be for defendant.

"10. On this subject you are further instructed that, as a

*3. CONTRACT: illegal consideration: gambling on board of trade.*

question of fact, you will determine whether the parties to said contract for the purchase or sale of the various commodities, if such contracts were made, really meant and intended to purchase, receive and pay for, or sell, deliver and collect, the price of the very commodities. purporting to have been bought and sold. If they did not, every such contract was a gambling transaction and void, and no rights can be founded thereon."

Counsel for appellants construe this instruction to mean that if any of the parties acted in bad faith the transaction is invalid, and insists that the jury should have been instructed that if Lowe Bros. & Co. acted in good faith, the transaction as to them was not a gambling transaction. The instructions, taken together, are not fairly susceptible of the construction placed upon them by appellants' counsel. The ninth instruction clearly directs the jury that the plaintiffs cannot establish title to the corn in suit, through the instruments in question, if they were issued to pay losses which Pike might suffer in the purchase and sale of commodities, wherein it was not the purpose, intention or expectation of *either* of the parties that such purchases or sales should be actually consummated by delivery or receipt of the thing purchased or sold, but, on the contrary, it was the purpose of *all* the parties that the same would be settled by the payment of the difference between the purchase or selling price and the market price at the time of settlement. This instruction is fully in accord with the doctrine announced in *Pixley v. Boynton*, 79 Ills., 351, cited and relied upon by the appellants.

The tenth instruction must be considered in connection with the ninth, and when so considered, the doctrine which it announces is not objectionable.

III. Appellants assign as error the giving of the following instruction:

"But if you believe from the evidence that said Pike was a warehouseman, wharfinger, or engaged in storing property for others, and if you believe that the corn in controversy

was at the date of said instrument in Pike's possession, and owned by him and stored in his cribs, and if you further believe that the said Pike issued and executed to plaintiffs said instruments or receipts as security for loans and advances of money then or theretofore made or to be made by plaintiffs to said Pike, then in law such instruments are not warehouse receipts in the specific and appropriate sense of the term, but the transaction is one of giving a lien in the nature of a chattel mortgage, and in order that it may be valid as such, there must not only be a legal consideration, but the corn upon which the lien purports to be given must be separate and identified, and if you find that such receipts were given as a lien only, and that the amounts of corn therein described were not set apart from all similar property in bulk or mass, with which it was mixed, if that be found by you, then no title to the designated number of bushels passed as security for the advances made or to be made, and no lien was created."

Appellants claim that the written instruments involved in this case are either warehouse receipts in the appropriate sense of the term or else they are of no validity whatever. In support of this position appellants cite and rely upon the case of *Sexton & Abbot v. Graham*, 53 Iowa, 181 (195). We do not deem it necessary to the disposition of this case to determine the question raised upon this instruction. The jury found specially that the transactions upon the board of trade of Chicago, by plaintiffs, for J. C. Pike, were gambling transactions. The transfer of the grain to plaintiffs, whether in payment of, or as security for, a liability growing out of a gambling transaction was invalid and without consideration, and it becomes immaterial to inquire whether a mere lien could be created by the instruments in question. See *Pickering v. Crose*, 79 Ill., 328; *Gregory v. Wendell*, 39 Mich., 337; *Rumely v. Berry*, 63 Me., 570; *Brua's Appeal*, 55 Pa. St., 294; *Barnard v. Backhaus*, 9 N. W. Rep., 595; *Kirkpatrick v. Bonsall*, 72 Pa. St., 155; *In re John Green*, 7 Bissell, 338.

IV. It is claimed that the finding of the jury that the transaction on the board of trade of Chicago by plaintiffs for J. C. Pike were gambling transactions, is altogether without support in the evidence. The question was submitted to the jury under proper instructions. It appears quite clearly from the testimony that Pike neither expected to deliver nor receive the commodities sold or purchased, but that he simply expected to receive or pay the differences in price, upon final settlement. There is no direct testimony that the plaintiffs had the same intention. It does appear, however, that settlements were usually, if not always, made either by paying or receiving the differences in price. The articles sold or purchased were not in fact delivered. The jury was authorized to find the intention of the plaintiffs by the course of dealing between the parties. The verdict in our opinion cannot not be disturbed as unsupported by the testimony.

4. EVIDENCE: intention proved by conduct.

AFFIRMED.