Lowry vs. Dillman.

LOWRY vs. DILLMAN.

*November 28, 1883 — January 8, 1884.*

*(1) Gambling contracts. (2) Evidence: Court and jury.*

1. Contracts for the sale of commodities, where neither party contemplates the delivery of the property, but merely that the difference in price is to be paid according to the rise and fall in the market, are gambling contracts, and any security founded on them is void.
2. Upon the evidence in this case the question whether a note was given for losses on gambling contracts should have been submitted to the jury.

APPEAL from the Circuit Court for *Milwaukee* County.

Action upon a promissory note for $641.25, given by the defendant to the plaintiff. The facts sufficiently appear from the opinion. The defendant appealed from a judgment in favor of the plaintiff.

For the appellant there was a brief by *Goodwin & Benedict*, and oral argument by *Mr. Goodwin*.

For the respondent there was a brief by *Jenkins, Winkler & Smith*, and oral argument by *Mr. Winkler*. To the point that the burden of proving the transaction illegal was upon the defendant, they cited: *Roundtree v. Smith*, 108 U. S., 269; *Murry v. Ocheltree*, 49 Iowa, 435; *Union Nat. Bank v. Carr*, 15 Fed. Rep., 438; *Gilbert v. Granger*, 8 Biss., 214; *Pixley v. Boynton*, 79 Ill., 351; *Bigelow v. Benedict*, 70 N. Y., 202. To make the contract void both par-

ties must intend that there shall be no actual delivery. *Murry v. Ocheltree, Union Nat. Bank v. Carr, supra; Clarke v. Foss,* 7 Biss., 540, 552; *Gregory v. Wendell,* 39 Mich., 337; *Barnard v. Backhaus,* 52 Wis., 593.

COLE, C. J.    The defense set up in the answer to the note sued on is that it was given to the plaintiff on the settlement of balances on gambling contracts in barley, which the plaintiff had made with the defendant, or with others at his request.    At the close of the testimony the learned circuit court directed the jury to return a verdict in favor of the plaintiff for the amount due on the note.    The sole question we have to consider is, Was there sufficient evidence to carry the case to the jury on the point whether or not the note was given for differences or losses in gambling contracts?    We are all clearly of the opinion that the case should have been submitted on the evidence, and that it was error to withdraw it from the consideration of the jury.

This court has held that contracts for the sale and purchase of commodities, where neither party intends to deliver or accept the property sold, but where they are merely to pay the differences in price according to the rise and fall in the market, are gambling contracts, and that any security founded on such transactions is void.    *Barnard v. Backhaus,* 52 Wis., 593; *Everingham v. Meighan,* 55 Wis., 354. The doctrine of those decisions will be rigidly enforced in all cases fairly coming within its scope and meaning.    This is all we deem it necessary to say upon the law of the case.

As the case must go back for a new trial, it would be improper to go into any general discussion of the evidence, or even to indicate our views as to what facts it establishes. Substantially the same testimony may be given on another trial.    It should be considered by the jury without any bias which an expression of our views upon it might create.    We will only allude to some aspects of the case which have led

us to the conclusion we have announced. It appears the defendant is engaged in the business of keeping a saloon in the city of Milwaukee, and the plaintiff is a commission merchant doing business in the chamber of commerce in that city. The defendant testified in effect that sometime in October, 1879, a clerk in the employ of and acting for the plaintiff came to his saloon, said "everything was up," and "he thought there was money in barley." As the result of this interview the defendant gave the clerk $800 as margins on 15,000 bushels of barley. The price of barley declined, and soon the defendant was called upon to advance more margins. Thus the business ran along until the following March, "when the deal was closed," and the note in question was given "for differences in barley." Monthly statements were rendered the defendant, which upon their face purport to be an account of purchase and sale of barley, showing what the defendant had made or lost in the transaction, and giving the amount of grain sold and purchased. The defendant said that he never received from the plaintiff, or anybody else for him, any barley; that he was never offered any; that he never ordered the plaintiff or any body else, to sell any barley for him; that he never in fact intended to receive the barley, but considered it "only a speculating order — a monthly option;" in other words, a mere bet or wager on the price of barley at a future day. This, in substance, is the defendant's version of the matter.

The evidence given on the part of the plaintiff tends to prove quite a different transaction. According to that testimony the defendant came to the plaintiff's office about the 20th of October, and gave an order to buy for him 15,000 bushels of barley, to be delivered in November. Thereupon the plaintiff purchased for the defendant this quantity of barley, and paid for it. There is no dispute about the amount of margins advanced by the defendant. The purchase was actually made, and the barley was all delivered by

the sellers.   The plaintiff had the barley ready for delivery to the defendant on the contract in November.   The defendant, however, was not ready to receive it then, but ordered the plaintiff "to carry" it through the month of December.   The plaintiff did so, and continued "to carry" the barley, or most of it, for the defendant, until it was finally sold in March by defendant's order.   The trade was closed out at a loss, and the note in suit was given in part payment of the actual difference between the price at which the barley was originally purchased and paid for, and what was realized from the sale, with the carrying charges and commissions earned in doing the business.   This, in substance, is the nature of the transaction which the plaintiff's testimony tends to prove.

If this is a correct version of the matter the contracts are relieved from all taint of illegality; for actual trades were made, property was actually bought and paid for, and was ready for delivery to the buyer on the contracts when they matured.   The transaction was valid; so far, at least, as the plaintiff was concerned.   But it cannot fairly be claimed that the evidence which was introduced on the part of the plaintiff proves any such facts or course of dealing between the parties clearly and satisfactorily.   On the contrary, there are many suspicious circumstances surrounding the transaction, even in the light of the plaintiff's own testimony.   For instance, he attempts to explain the monthly statements which he rendered the defendant from time to time, and which, as we have said, profess to show purchases and sales of barley on defendant's account.   And he is forced to admit that these statements are not accounts of actual purchases and sales.   Of course, it is not easy to explain to a person of ordinary intelligence and business experience why the plaintiff — if he really purchased the barley for the defendant as he said he did, and had it on hand — should resort to the idle ceremony of selling the

grain, then buying it back in a day or two at an advanced price, the grain to be delivered by the purchasers within the month — and repeat this same thing several times. The plaintiff claims that this is an expedient resorted to by dealers in the chamber of commerce to fix charges for storage of the grain for the month, insurance, interest, etc. This may all be so, but the reason or necessity of doing business that way, instead of doing it in a direct, plain manner, is not obvious. Why it should be necessary to resort to the market reports in the chamber of commerce at a particular day, to ascertain the amount of carrying charges, we fail to comprehend. If the transaction was really legitimate, one would naturally suppose that it would be easier to render an account for interest, storage, insurance, etc., according to the facts, than to make such statements as were rendered. But, if the transaction was in fact a mere wager or bet on the rise or fall in the price of barley, then these statements would be the direct way of showing how the deals stood each month.

Again, the plaintiff attempts to show what the contract was which he made with the defendant for the purchase and delivery of the grain. Ordinarily, the purchase and sale of a quantity of grain, where the seller holds it for a time for delivery, is not a very complicated matter, or one difficult to be understood. But after carefully reading over more than once the testimony of the plaintiff and of his clerk, not a member of the court is certain that he understands how the business was transacted. It is doubtless our fault and want of knowledge as to the method of doing business by the members of the chamber of commerce. Be this as it may, the original contract between the parties was not produced on the trial, not being found. But the blank form of a contract, similar to the one which it was claimed was made, was introduced. According to this form the plaintiff sold and agreed to deliver, and the defendant bought and agreed

Lowry vs. Dillman.

to receive and pay for on delivery, the barley at a stipulated price; the grain to be delivered in warehouse receipts at such times in the month of —— as the seller might elect. Then comes the provision that the contract is subject to the rules and regulations of the chamber of commerce of Milwaukee, which rules and regulations were made a part of the contract. Now, what these rules and regulations are does not appear in the case, and we do not understand they were introduced on the trial, though they were a part of the contract out of which the note originated. We must say there is a mystery about the whole transaction which does not usually attend an actual, *bona fide* purchase and sale of property. These fictitious sales and purchases which were resorted to, what do they mean? Were they mere devices to cover up the real nature of the transaction? There are many circumstances that are suspicious, and which tend to sustain the claim of the defendant that the contracts were mere gambling transactions, consequently illegal. The jury might have inferred from all the evidence that the parties never intended or expected that there should be an actual purchase and sale of barley, that there should be any delivery and acceptance of property, but that the whole " deals " were nothing more than wagers or bets on the rise or fall in the price of barley. The case should have been submitted to the jury, under proper instructions, according to the law laid down by this court in the decisions above referred to.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.