Hawes, J.
The facts in this case, as narrated by the defendant, are conceded by the plaintiffs, and we are called upon to determine whether they establish a defense in law.
The plaintiffs are stockbrokers in this city, and in the course of their business they solicited defendant “ to carry on operations through their house,” and offered him strong inducements to do so, by relieving him from advancing money for margin, and by promising not to “press” him if he should be a loser, and by allowing him to take time to pay such losses, and further stipulating, in view of defendant’s pecuniary condition, that he should not be called upon to take up the stocks, and that he should be liable only for the “ differences,” between the purchase price and the selling price, i. <?., the loss, if any, and that the transactions should be carried on in their own names.
Under this arrangement defendant commenced operations and gave orders to buy and sell stocks, *476 consulting with plaintiffs. Monthly statements of such purchases and sales so made were rendered defendant, and the note upon which this action is brought was for the final balance so rendered. The defendant claims that the note, being given merely for differences, is obnoxious to the statutes relating to wagering contracts, and is invalid. The various and somewhat conflicting decisions, affecting this inhibitory statute in different sections of the country, have been misleading, but I fail to discover any substantial difference except as the varying facts would seem to create a modification. It must not only be a mere bet upon a future and uncertain event, but both parties must have so understood it (Hibblewhite v. McMorine,. 5 M. & W. 462; Gregory v. Wendell, 39 Mich. 337). It must be a mere colorable contract for the sale and purchasé of stock or other commodities, where neither party intends to buy or sell, or, as has been said, “it is a contract where each party means to break the contract, but to give the other a remedy against him for the difference of price, according as the market may rise or fall ” (Grizewood v. Blane, 11 C. B. 526), the presumption of law, however, being always-in favor of the legality of the contract.
In the case at bar, there is no pretense that the stocks were not bought and sold by Earl & Dayton as reported, and that the transactions as between them and third parties were not tona fide. It is quite clear, therefore, that there can be no basis whatever for this appeal, unless it can be held that the relation existing between plaintiffs and defendant was that of principals, and that as between them there was to be merely a liability for “differences,” no matter what might happen, and that so far as Howell was concerned there was to be no purchase and sale of stocks; or, in other words, that the relation of broker and customer did not exist between the parties ; and defendant’s counsel *477 cites the case of Byers v. Beattie (2 Irish Rep. Com. L. 220) in support of this contention, and claims that the prerequisites which tend to establish that relation, as defined by Chief Justice Hcwt in Markham v. Jaudon, (41 N. Y. 286), are wanting. Now, as to the latter proposition, it may be briefly said, that the conventional usage between broker and client to put up a margin of ten per cent, is of no legal importance, and in itself constitutes no relationship, for if a broker chooses to waive a margin on the part of a customer, he can do so without waiving any of his rights as a broker, and in no sense would his liability as such be diminished by reason of that circumstance which may readily arise through kindness on the one side, or inability on the other. The only substantial question to be determined is whether the customer, at an agreed or implied compensation, employed the broker to buy and sell for his account certain shares of stock, the customer being liable for the losses and availing himself of the profits of the transaction ; every other matter being incidental and subject to mutual agreement inter sese. The vital difficulty in the case cited by defendant (Byers v. Beattie, supra), was that in that case (which was a suit for indemnity), there was no proof whatever “ that the plaintiffs, in making for the defendants the contracts of purchase and sale, contracted any liability to the vendors or vendees, or that they paid any money to the vendors, or received any money from the vendees. There is no averment of any transfers or transfer.” The court in a dictum, however, does say that even if it were otherwise, and the averment showed that there was no intention that the defendant, should be liable for anything but differences, the defense would be valid. The case did not turn upon this phase of the case, although I think the proposition as one of law can be conceded. The difficulty in the case at bar arises, 1 think, from the unj ustifiable *478 use of terms. The word “ differences,” when used in connection with wagering contracts, may be said to have a technical and well-defined meaning. A wager is said to be a contract by which two parties agree that a certain sum of money or other' thing shall be paid or delivered to one of them on the happening, or not happening, of an uncertain event, and the amount thus determined, or to be determined, may be called “difference,” and in one sense the difference is the wager itself, and it might as ’well be called the bet or stake (See Woodcock v. McQueen, 11 2nd. 14; Harris v. White, 81 N. Y. 532) ; but the term when, used in this connection must have behind it the implication that there is something hazarded on the issue of an uncertain event. Difference in its generic sense, as defined by lexicographers, as well as from its derivation, implies contest or contention, and it has doubtless come to be used in this relation, from the fact, that the betting parties differ as to the result of the uncertain event. There is no possibility, however remote, that the parties in interest herein used the term in any such sense, or intended that it should be subject to any such interpretation. There is no wagering element whatever involved in the contract, as it appears upon the record before us, granting to defendant for the moment all that he claims. His liability as between himself and the plaintiff carries with it no suggestion of any bet or wager.
The difference referred to as between themselves wras a mere difference in price between the sum total of stocks actually sold and stocks actually bought, and such purchases and sales are unquestioned in law and in morals. It was not any bet or wager, as possibly in time contracts, wdiere no stocks are transferred, and parties know that they are not to be transferred, and the “differences” only are to be paid, which carries with it in its very negation the implica *479 tion of a wager (Grizewood v. Blane, svpra; Cooper v. Neil, Weekly Notes, June 1, 1878).
In the case at bar everything takes place that can take place in any business venture, and no gambling element exists which I can discover, unless the very buying and selling of stocks is gambling, but the law has not unfortunately yet so defined it. But I think that the evidence, as it appears upon the record, falls far short of the defendant’s contention. It is true that the plaintiffs consented to carry defendant’s stock without any margin, and that they had a clear right to do if they were'so foolish, without its working any prejudice to their interests, and they also bought the stock in their own names, as is the custom, I am informed, on the exchanges, but these facts would not make Earl and Dayton principals as between themselves and defendant, nor possibly between themselves and third parties, if they were called upon to give up their principal and consented to do so.
These facts are of no importance in view of the evidence that Howell “carried on operations” through plaintiffs’ house and ordered them to buy and sell certain specific stocks which they did buy and sell; that such stocks were subject to defendant’s order and control, and that monthly accounts were rendered to defendant of all the transactions, and that the notes in question were given for the final balance as thus rendered, and, in short, that Howell employed the plaintiffs as brokers to buy and sell stocks. No more specific liability, so far as employment is concerned, could be established, and if the persons so employed consented to look after defendant’s' stock and protect them in case of sudden declines, and even with knowledge of defendant’s inability to protect them himself, in case either of sale or purchase, I do not see how such an act of kindness *480 shall enure to defendant’s benefit or do the plaintiff harm. The stocks purchased by plaintiffs belonged to Howell and to no one else, and the relation thus originally established between the parties has not been in any respect changed or modified. Howell is still a customer, and Earl and Dayton are his brokers, obeying his instructions in the purchase and sale of stocks, and they are bought and sold on his account, and under his original employment he is admittedly liable for the losses as such. This view is supported by Thacker v. Hardy (L. R. 4 Q. B. Div. 685), which is an extreme case upon the question under discussion, and the rule governing it is very fully defined.
I fail to discover in the case at bar any constructive wager.dependent upon “any casualty or unknown or contingent event ” within the provision of the statute, and the, judgment should be affirmed with costs.
Nishrbas, J., concurred.
Note on Wagering Contracts.
The various legal questions arising out of wagering contracts in stocks, grain, etc. may be further elucidated by reference to the following most recent cases upon the subject.
Intention of the parties.*] Whether a contract for the purchase or sale of stock, etc. is illegal as a mere wager, depends upon the intention of the parties thereto. “Futures ” in stocks or grain, whether in the form of a “ put” or “ call” or “ straddle,” are not in themselves illegal; they become so only when it is shown that neither party intended delivery of the commodity in performance of the contract, but only a payment of the difference in price as damages for its nonperformance. Lowry v. Dillman, 59 Wis. 197; Branch v. Palmer, 65 Ga. 210; Henson v. Flannigan, White & W. Tex. App. 289; Pickering v. Cease, 79 Ill. 328; Rumsey v. Perry, 65 Me. 570; Waterman v. Buckland, 1 Mo. App. 45; Storey v. Salomon, 6 Daly, 531; Wolcott v. Heath, 78 Ill. 433; Bruce c. Smith, 44 Ind. 1.
The option as to the delivery of merchandise purchased, is not illegal, if there be an agreement to make actual delivery. The optional contracts which are void are such as do not contemplate the *481 actual delivery of the commodity purchased, but rather contemplate that the subject of the contract is not to be delivered. Gregory v. Wattowa, 58 Iowa, 711; Hatch v. Douglas, 48 Conn. 116; Smith v. Bouvier, 70 Pa. St. 325.
The test of illegality is the intention of the parties to the contract. Kirkpatrick v. Adams, 20 Fed. Rep. 287; Williams v. Carr, 80 N. C. 294; Lyon v. Culbertson, 83 Ill. 33; Cobb v. Prell, 22 Am L. Reg. N. S. 609, with note, collating many cases.
Although an understanding between both parties that the difference between the contract and the market pi ice shall be paid, is, under the contract, a mere wager and illegal, if either contracts in good faith, a subsequent agreement to pay this difference will not affect the validity of the contract. Sawyer v. Taggart, 14 Bush, 727.
If the parties intend in fact to buy or sell actual cotton, to be delivered at a future time agreed upon by them, it is not a gambling transaction, although they exercise the option of settling the difference in price rather than make delivery; but if the original purpose be not to deliver cotton, but to use the form of a contract for a genuine sale as a method of merely speculating in the fluctuations of the market price, the contract is void, although there be an option of veritable sale and delivery. It is a question of fact for the jury to determine the intention. Kirkpatrick v. Adams, 20 Fed. R. 287.
But in order to invalidate a contract for the sale and future delivery of merchandise, on the ground that it is a gambling contract, the.intent that it should be a mere betting on the market, without any expectation of actual performance, must be mutual and constitute an integral part of the contract. The secret intention of one of the parties not to fulfill his contract, uncommuuicated to the other, is not enough to make the transaction illegal, nor that it was contemplated by him thereafter to adjust the difference resulting from the fluctuations in the market price in case of a rise or fall, by making good, in money, by way of compensation, a guaranty to save the other party harmless against loss, or in like manner to make good the premium on profit to accrue to the other in case of advance in prices. Marx v. Ellsworth, Supm. Ct. Texas Law Times, p. 245, July 31, 1880, citing Clarke v. Foss, 7 Biss. 540; Lehman v. Strassberger, 2 Wood, 562; Gilbert v. Gangar, U. S. Circ., 7 Cent. L. J. 41; Wolcott v. Heath, 78 Ill. 433; Logan v. Musick, 81 Id. 415; Hibblewhite v. McMorine, 5 M. & W. 462; Porter v. Viets, 1 Biss. 177.
That the intention must be mutual, see, also, Williams v. Tiedemann, 6 Mo. App. 269; Wall v. Schneider, 59 Wis. 352; Hentz v. Jewell, 20 Fed. Rep. 292; Williams v. Carr, 80 N. C. 294.
Applying this rule, it was held in a suit on a note given for losses *482 incurred in trading in grain “options,” that although the defendant testified that he intended simply to gamble on the fluctuations of the market, yet as he offered uo evidence as to plaintiffs’ intention, and they testified positively that they bought the grain intending to perform their contract with defendant, and deliver the grain, the defense of illegality was not sustained. Murry v. Ocheltree, 59 Iowa, 435.
A contract for sale of grain is not void because delivery is to be made in warehouse receipts; nor because the buyer is required to put up a margain as security; nor because the contract provides that the measure of damages in case of a brdacli shall be the difference between the contract price and the market, price on the chamber of commerce where the contract is made; nor because the seller has an option as to the precise time of delivery, lie being bound to deliver within a limited period. Wall v. Schneider, 59 Wis. 352.
A speculative contract in the purchase and sale of stock is not less a wager because one of the parties, the broker, obtained a guaranty of the performance of the bargain by the other party. Flagg v. Baldwin, 38 N. J. Eq. (11 Stew.) 219, 233.
One who deposits margins in the purchase of cotton futures, as a pure speculation upon the price, cannot recover them, since the court will not aid either party to an illegal act. Thompson v. Cummings, 68 Ga. 124.
Where the defendant employs the plantiff to buy “ futures” in the market of the plaintiff, without specific instructions or restrictions, the plaintiff may assume that the business is to be done by the rules or custom established for himself; and the defendant’s knowledge of that custom is not material; neither is his intention to engage in gambling in prices material in determining whether the contracts actually made were illegal. Kirkpatrick v. Adams, 20 Fed. Rep. 287.
A gambling contract in stocks, though made in a State where it is valid and enforceable, will not be enforced by the courts of another State, at least, against residents and citizens thereof, if its enforcement would violate the plain public policy of that State on the subject of gambling and betting, as evinced by the statute against it. In this respect such a contract is excepted from the rule of comity which requires the enforcement by the courts of one State of contracts made in another, if valid by the lex loci contractus. Flagg v. Baldwin, 38 N. J. Eq. (11 Stew.) 219.
An executory contract for the sale of property is not rendered illegal as a wagering contract by the fact that the seller has not the property at the time he makes the contract, but expects to go into the market to buy it in order to enable him to fill it. Williams v. Tiede *483 mann, 6 Mo. App. 269; Bartlett v. Smith, 13 Fed. Rep. 263; Sawyer v. Taggart, 14 Bush. 727; Kent v. Miltenberger, 13 Mo. App. 503.
Statutes against gaming.] The cases are in conflict upon the question whether a bet or wager was void at common law (see cases cited in Dos Passos on Stochbr. 406). In jurisdictions, holding the affirmative of this question, it has been held that whatever may be the form of the contract, if from the nature of the transaction and the circumstances surrounding it, it is apparent that the purpose is not to buy or sell the goods, and that no delivery of them is intended, but that at the time appointed for delivery the transaction should be closed upon the basis of the then market price of the goods, the losing party paying the difference, even though there be no statute denouncing it, such contract is void at common law, as a wager. Hawley v. Bibb, 69 Ala. 52. It is contra bonos mores and against public policy. Rudolf v. Winters, 7 Neb. 125; Exp. Young, 6 Biss. 53.
But is such a contract void within the statutes found in all the States, against betting and gaming ? It has been held to come within the English statute (8 & 9 Viet. c. 109, § 18), declaring all contracts by way of gaming and wagering void, and forbidding recovery of any money won on a wager. Grizewood v. Blanc, 11 C. B. 526. Recent American authorities, however, appear to be in conflict on this point.
In Shaw v. Clark, 49 Mich. 384, it was held that dealings in options, although so contrary to public policy as to render invalid negotiable paper based upon them, were not “ gaming ” or betting, as commonly understood, or within the Michigan statute, and the case of Barnard v. Backhaus (52 Wis. 593), was explained as not deciding that dealings in options were within the statute against betting and gaming, but as holding them illegal upon grounds of general public policy.
On the other hand Flagg v. Baldwin, 38 N. J. Eq. (11 Stew.) 221, holds such contracts, though valid at common law, illegal and void under the statute of New Jersey against betting and gaming.
Evidence.] To uphold a contract for the sale and delivery of grain at a future day, for a price certain, it must affirmatively and satisfactorily appear that it was made with an actual view to the delivery and receipt of the grain, and not as a cover for a gambling transaction. Barnard v. Backhaus, 52 Wis. 593. It is the duty of the courts to scrutinize very closely contracts for future delivery, and if the circumstances are such as to throw doubt upon the question of the intention of the parties, it is not too much to require a party claiming-rights under such a contract to show affirmatively that it was made with actual view to the delivery and receipt of the commodity. Cobb v. Prell, 22 Am. L. Reg. N. S. 609, with note.
The question of intent is for the jury (Lowry v. Dillman, 59 Wis. *484 197), and the fact may be found from the course of dealing between the parties. Lowe v. Young, 59 Iowa, 364.
There must, however, be some proof that the particular contracts in question, were gambling contracts; and hence, in a broker’s action against his customer for money advanced, at his request, to cover losses in contracts for the purchase of provisions, the defense of illegality is not sustained by proof that a very- large proportion of all the contracts made by members of the Chicago Board of Trade (where the contracts in question were made) for the sale of provisions, were settled by the payment of differences, and that nothing else was expected. Roundtree v. Smith, 108 U. S. 269.
Defendant, a grain-dealer, having a “regular” account with plaintiff, as a commission merchant, employed the latter to buy and sell grain for him in form, for future delivery and account for profits, which latter transactions were kept separate on the books, and called in the correspondence of the parties “ scalping,” “ deals,” “options,” “speculating deals,” etc. In an action to recover a balance on such account, it was held that such employment was a gambling "transaction and the contracts gambling contracts, and that an instruction that, notwithstanding the original claim against defendant was void as a gambling transaction, yet a compromise for a less sum became a valid and lawful claim against defendant, was erroneous. Everingham v. Meighan, 55 Wis. 354.
An “ option deal,” or contract for the purchase of grain, giving the seller the option of delivery within certain days is presumptively valid, and the burden is oil the one who pleadsitsinvalidity to show that it was a mere wager on the future state of the market, because of an agreement between the parties that it might be performed by payment of difference in price instead of delivery of the grain. Kent v. Miltenberger, 13 Mo. App. 503. Compare Williams v. Tiedemann, 6 Id. 269; Bigelow v. Benedict, 70 N. Y. 202.
Broker's rights and liabilities-l The conflict among the authorities upon this subject is illustrated in the following recent cases.
Where parties knowingly furnish means for an illegal transaction, and make advances in the settlement of losses under illegal contracts, the court will nob aid them to recover moneys thus paid out; but if parties acting as brokers in the sale and purchase of wheat, without disclosing the name of their principal, enter into'bona fide contracts for the actual sale and .delivery of wheat with third parties for -defendant’s account, and at his request settle the losses,' and pay the amount due, they are entitled to recover the moneys thus paid. Bartlett v. Smith, 13 Fed. Rep. 263; Thompson v. Cummings, 68 Ga. *485 124; Wright v. Crabbs, 78 Ind. 487. Compare Roundtree v. Smith, 108 U. S. 269.
A principal cannot avoid his liability, to a broker for commissions and advances in making sales of grain for future delivery, by setting up that his intention in making the sales was to wager upon the future price of the grain, of which intention the broker had knowledge. Kent v. Miltenberger, 13 Mo. App. 503. In this case the court disapprove Fareira v. Gabell, 89 Pa. St. 89, as in conflict with the former cases of Smith v. Bouvier, 70 Pa. St. 325; and Bruce’s Appeal, 55 Pa. St. 294, and follow Lehman v. Strassburger, 2 Wood. C. Ct. 554; and Sawyer . Taggart, 14 Bush, 727, on this point.
If there is no statute declaring future contracts, which are mere wagers, illegal and void, the general rule is that where.a party makes such contracts through a broker, for a commission only, which is payable in any event, whether loss or gain result to the principal, such broker having no interest in the contracts, the principal is bound to reimburse the broker for advances made for him, if he subsequently execute his note or bill therefor, or make an express promise to pay them, or if with full knowledge of the facts and without objection he permits the transaction to proceed. But, as the statute of this State pronounces all contracts founded in whole or in part, on a gambling consideration, void, the broker cannot recover, nor can his innocent indorsee for value, upon the principal’s acceptance of a bill of exchange given to the broker to be used to simply stake margins to cover differences in price, with no intention, to the broker’s knowledge, to either receive or deliver the goods. Hawley v. Bibb, 69 Ala. 52.
A broker may recover for services in finding a purchaser, although the contract of sale afterwards made with his knowledge is against public policy as a wager contract. Crane v. Whittemore, 4 Mo. App. 510.
On the other hand, it was held in Cannan *. Bryce, ZB. & A. 179, that one who had lent another money to enable him to pay for losses and compounding differences in stock transactions, could not recover the loan since the statute had absolutely prohibited the payment of money for compounding differences in stock bargains, and it could not be lawful for another to furnish the means of payment.
Where the principal employs an agent to buy “futures,” if the dealings be illegal as gambling transactions, the agent cannot recover his advances and commissions, as he is the active agency engaged in placing the contracts and directing the business. Kirkpatrick v. Adams, 20 Fed. R. 287; Matter of Green, 7 Biss. 338; Thompson v. Cummings, 68 Ga. 124.
In Flagg v. Baldwin, 38 N. J. Eq. (11 Stew.) 221, the doctrine of *486 Ruchizky v. De Haven, 97 Pa. St. 202, and other Pennsylvania cases, and Justh v. Holliday, 11 Wash. L. Rep. 418; Cobb v. Prell, 22 Am. L. Peg. N. S. 609, that between a broker and the customer who deals on margins, knowing no other person in the transaction than the broker, and having no claim upon, and subject to no liability to, any other person whatever, exists the relation of principals, and not of principal and agent,—is approved and followed. In referring to the New York decisions on this point, the court says: “ It has been there held that a broker can recover from his customer deficiencies arising from sales of stocks bought on a margin, and that where, upon a margin, a broker made ‘short sales’ of stock, which he borrowed for that purpose, he might recover of his customer what was expended in replacing the borrowed stock. Wicks v. Hatch, 62 N. Y. 535; Knowlton v. Fitch, 52 N. Y. 288. But in these cases, it does not seem to have been contended that the contract was a mere cover for a wager, Such contention was made in Kingbury v. Kirwan, 77 N. Y. 612, and Bigelow v. Benedict, 70 N. Y. 202, but it was held that there was no sufficient evidence that the transactions were not real. Upon a review of all the cases in New York, they establish, in my judgment, the correct doctrine that a contract relating to differences only, would be a wager contract. But they also hold that dealings on margin are not to be considered as dealings in mere differences. If, in any case, evidence sufficient to show that the margin dealings were mere covers for dealings in differences was produced, then, upon principles, there laid down, the contracts would be wagers. .....The point of divergence between the Now York and Pennsylvania cases is upon the relation existing between the customer and the broker who is managing a speculative account upon a margin. The New York cases treat the broker as a mere agent, and so, as a pledgee of the stocks purchased on such an account. This result was reached by a divided court, Justices Grover and Woodruff delivering vigorous dissenting opinions. The latter especially points out, in a perspicuous, and, in my judgment, convincing way, the plain difference between a stockbroker dealing on margins and a broker or agent in ordinary transactions. Markham v. Jaudon, 41 N. Y. 236, 256.”
In Thacker v. Hardy, L. R 4 Q. B. Div. 685, a broker was permitted to recover of his customer indemnity for contracts entered into on a speculative account., although the broker knew the customer did not intend to accept the stock bought, or deliver the stock sold for him, but expected the broker to so arranged matters that nothing but differences were to be payable by him. This decision is explained in Flagg v. Baldwin, 38 N. J. Eq. (11 Stew.) 221, as based on the fact that the gaming act made such contracts merely void, and did not *487 declare them illegal, so that the broker was not within the rule that no party to an illegal transaction can recover.
That a broker cannot enforce collateral securities given him by his principal to secure the payment of notes for past and future losses incurred in gambling transactions in various commodities carried on by the broker upon the Chicago Board of Trade,—see Lowe v. Young, 59 Iowa, 364. But compare Read v. Anderson, 51 L. T. N. S. 55, allowing recovery of losses in betting at horse-races in plaintiff’s own name, but, in fact, as defendant’s agent.
Defendants dealt in cotton futures, receiving and posting' telegrams as to the price, upon which their customers dealt. At night they bought or sold futures in New York in their own' names, so as to cover the transactions of the day. It was held that they were the principals as to a customer dealing with them, and not his brokers, and therefore could .not recover upon his draft, given to pay losses. Thompson v. Cummings, 68 Ga. 124. See, also, Porter v. Massengale, 68 Ga. 296.
While courts will not enforce an illegal contract between the parties, yet, if an agent of one of the parties has, in the prosecution of the illegal enterprise for his principal, received money or other property belonging to his principal, he is bound to turn it over to him, and cannot shield himself from liability therefor, upon the ground of the illegality of the original transaction. So held, in an action by one who had given a sum of money to defendant, a broker, to be invested in wheat options, to recover the amount and profits realized on the first transaction, the whole sum having been subsequently lost in another investment which plaintiff claimed was unauthorized. Norton v. Blinn, 39 Ohio St. 145.