Warren, Lane & Company vs. Hewitt.

---

WARREN, LANE & COMPANY, plaintiffs in error, vs. WILSON C. HEWITT, defendant in error.

An executory contract for the sale of goods, to be delivered at a future day, where both parties are aware that the seller expects to purchase himself to fulfill his contract, and no skill and labor or expense enters into the consideration, but the same is a pure speculation upon chances, is contrary to the policy of the law, and can be enforced by neither party. But where such a contract is executed, an agent employed by his principal to make the contract can recover from him any money he may have advanced in the transaction by his authority, or without authority, if the principal, after such advance, ratify his agent's act in making it.

Sale for future delivery. Policy of law. Illegal Consideration. Ratification. Principal and agent. Before Judge GIBSON. Richmond Superior Court. June Term, 1871.

Wilson C. Hewitt brought complaint against Warren, Lane & Company for the recovery of $2,000 on a due bill, and $2,000 on an account for cash, paid to said Warren, Lane & Company to invest in cotton for said Hewitt. The defendants pleaded to said action that, on December 21st, 1869, they received from said plaintiff $2,000, to be used as a margin in the purchase for plaintiff of two hundred bales of cotton for future delivery; that on or about December 29th, 1869, said defendants, by Messrs. J. Henly Smith & Company, of Baltimore, purchased in said city, for said plaintiff, two hundred bales of cotton, to be delivered in April following; that on or about February 24, 1870, the decline in cotton made it necessary that an additional $2,000 margin should be deposited, and that defendants, by direction of plaintiff, supplied the requisite margin, on February 26th, 1870, in payment of the due bill sued on; that subsequently the further decline in cotton rendered an additional margin necessary, which plaintiff declined to put up, and said cotton was sold. The defendants further pleaded that said plaintiff was indebted to them in the sum of $1.278 24, balance due after crediting plaintiff with the $2,000 sued for. It appeared from the evidence that, on the 21st of December, 1869, Hewitt gave to Warren, Lane & Company, factors and commission merchants, of Augusta, $2,000, to be invested in cotton, to be delivered in April following. On December 21st, 1869, defendants sent by express to J. Henly Smith & Company, of Baltimore, $3,000 in gold, with instructions to hypothecate it for currency, and to hold $2,000 of the currency, as a margin for two hundred bales of cotton, which Smith & Company were instructed to purchase for a customer of defendants, to be delivered in April, 1870. On December 24th, 1870, defendants borrowed from plaintiff $2,000 for which they gave their due bill. On December 29th, 1869, Smith & Company purchased in Baltimore two hundred bales of cotton, at twenty-five and three-fourths

cents per pound, to be delivered in April, 1870, at seller's option. In February, 1870, Smith & Company called for an additional margin, and, on February 26, 1870, said additional margin of $2,000, was furnished by said defendants, and Smith & Company notified that the person for whom the cotton was purchased declined to put up any more. On March 2d, 1870, the cotton was sold, at a loss of $5,016 27, which was paid by defendants. When the cotton was ordered plaintiff's name was not disclosed. On May 16th, 1870, plaintiff commenced this action on the due bill. At the June Term, 1870, the petition was amended, and the $2,000 first deposited with defendants to invest in cotton was sued for. During the examination of Henry F. Russell, Esq., a witness for the defendant, the Court asked said witness to explain the character of these transactions, and remarked that it was made his duty to recommend amendments to the Penal Code, and, at the same, addressed William A. Walton, Esq., one of defendant's counsel, and called his attention to section 2596 of the Code, saying that the section was in the wrong place; that it ought to be among the penal laws. The jury found for the plaintiff $2,000, without interest, and canceled the claim of defendants against plaintiff. A motion was made for a new trial, which was overruled by the Court. Whereupon defendants excepted upon the following grounds, to-wit:

1st. Because the verdict of the jury is contrary to law and the justice and equity of the case.

2d. Because said verdict is contrary to evidence and the weight of evidence, and without sufficient evidence to warrant the finding.

3d. Because the Court erred in charging the jury, at the request of plaintiff's counsel, "that if defendants contracted for a sale of cotton, to be delivered plaintiff at a future day, and both parties were aware that the defendants expected to purchase themselves to fulfill their contract, and no skill and labor, or expense, entered into the consideration, it was a spec-

ulation upon the chance of the rise of cotton, and cannot be enforced."

4th. Because the Court erred in charging the jury, at the request of plaintiff's counsel, "that a due bill for borrowed money can be recovered on, however illegal the other features of the transactions between the parties may be."

5th. Because the Court erred in charging the jury, as re-requested by plaintiff's counsel, that, "where an agreement is entered into between parties in Georgia, to be carried into effect in New York or Maryland, it is to be controlled by the laws of Georgia, unless it is made to appear that the laws of New York or Maryland are different from those of Georgia, and the *onus* is upon the defendant to shew it."

6th. Because the Court erred in refusing to charge the jury, as requested by defendants' counsel, "that the law presumed that parties contract with reference to the law, and do not intend to violate it, and it is incumbent upon the parties who allege that the contract was illegal, to prove it."

7th. Because the Court erred in charging the jury as follows: "If, after you have considered the evidence, you shall be of opinion that this is a contract for the future delivery of cotton or not, at option of seller, it is contrary to public policy, and cannot be enforced in the Courts; therefore, if the defendants have advanced money for such a purpose, it cannot be recovered, neither can the plaintiff recover back from defendants any sum advanced by him for such a purpose, if invested as requested. If a party selling may or may not deliver, but settle the difference, it is nothing more or less than betting on the price of cotton, at a given time in the future, and must, at least, be a pure speculation on chances; and, therefore, contrary to the policy of the law. If, then, in pursuance of the contract made between Hewitt and Warren, Lane & Company, in December, 1867, Warren, Lane & Company purchased, in Baltimore, through Smith & Company, two hundred bales of cotton for future delivery in April, at the option of the seller, it is a contract against

the policy of the law, and cannot be enforced, or any portion of it, by either party, and the sum advanced by defendants, or commissions claimed for the same, cannot be allowed."

8th. Because the Court erred, and made an impression on the jury adverse to defendants, in this, that during the examination of Henry F. Russell, a witness for the defendants, the Judge asked said witness to explain the character of these transactions, meaning the buying cotton for future delivery, and remarked that it was made his duty to recommend amendments to the Penal Code, and, at the same time, addressed William A. Walton, Esq., one of defendants' counsel, and called his attention to section 2596 of the Code, saying that it, the section, was in the wrong place; that it ought to be among the penal laws; all which was said by him in the presence and hearing of the jury, and was calculated to make the jury believe that defendants' conduct was obnoxious to the provisions of said section of the Code.

W. H. HULL; J. C. C. BLACK, for plaintiffs in error. The charge referred to in the 6th ground was law, and applicable: 16 Ga. R., 162; 19 Ga. R., 75. The 3d, 5th and 7th grounds involve Code, section 2596, and its applicability to the case. That section is not the law of this case. The contract between Hewitt and the seller of the cotton was not a Georgia contract. Our Court will presume that the common law prevails in the other States: 34 Ga. R., 407; Story on Contracts, vol. 2d, sec. 776. If it was valid in Maryland, it is valid everywhere: 2 Ga. R., 165. If section 2596 of the Code was applicable to the original transaction, this would not prevent Warren, Lane & Company from recovering the money paid for Hewitt: 2 Wilson R., 309; 4 Burrows R., 2069; 11 Wheaton R., 272; 3 Ga. R., 176; 30 Ga. R., 547. If there had been a profit, and it had been paid to Warren, Lane & Company, they could not set up the illegality of the original transaction to defeat Hewitt's recovery from them: 1 Boss. and Pull. R., 3; 11 Wheaton R., 592; 12 Howard, 79; 18

Howard, 510; 2 Wallace, 79. As to the 8th ground, see Code, section 3183; 34 Ga. R., 263; 37 Ga. R., 218; 38 Ga. R., 73. The statute is imperative: 39 Ga. R., 603. This transaction has no shadow of illegality at common law: Benjamin on Sales, 60; 2 Bingham New Cases, 722.

JOSEPH P. CARR; FRANK H. MILLER, for defendant: 1st. A parol contract to purchase cotton for future delivery, made in Georgia, is void: Code, sections 2596, 2169; Hamberger *vs.* Powell, decided September 5th, 1871. 2d. A contract void in Georgia is void everywhere: Law Times, Oct., 1871, 189; In Re. Conrad, Story C. L., 243. 3d. The legal features of a contract can be enforced, however illegal the others are: 39 Ga. R., 531; 41 *Ibid.*, 331; Code, sec. 2707. 4th. The law of the place of performance must be shown to be different from the law of Georgia, otherwise the law of Georgia construes the contract: 38 Ga. R., 129; 31 *Ibid.*, 210; 41 *Ibid.*, 449; 37 *Ibid.*, 428; 34 *Ibid.*, 415. 5th. If the finding of the jury was right under the law applicable to the statement of facts in the record, it should not be disturbed: 42 Ga. R., 249; 40 *Ibid.*, 254; 35 *Ibid.*, 54.

MONTGOMERY, Judge.

This was a suit by the defendant in error to recover the amount of a due bill for $2,000, borrowed by the plaintiffs in error.

A set-off was filed, which originated as follows: On December 20th, 1869, Hewitt employed Warren, Lane & Company, as factors and cotton brokers, to purchase two hundred bales of cotton for him, to be delivered in April following, "at seller's option." He placed $2,000 in their hands as a "margin." The cotton was purchased in Baltimore, through a commercial house of that city, and the "margin" deposited with that house. The purchase was made December 29th. On December 24th, Hewitt loaned Warren, Lane & Company $2,000 more, for which they gave the due bill sued on.

In February, the Baltimore firm notified Warren, Lane & Company that, owing to the decline in cotton, the margin was exhausted, and called for a further margin. Warren, Lane & Company telegraphed that it would be made good, before seeing Hewitt. They afterwards (the next day) saw him and told him what they had done. One of the firm of Warren, Lane & Company testified that Hewitt acquiesced. Hewitt, however, denies this. At all events they sent on $2,000 as a further margin. In March, cotton still declining, they were again telegraphed by their Baltimore correspondents that a further margin was required. They informed Hewitt, and he declined to have anything further to do with the transaction. The cotton was then sold at a loss of about $5,200—the balance of which, some $1,200, Warren, Lane & Company paid. And this sum, together with the $2,000 sent forward in February, they pleaded as a set-off to the due bill, and seek to recover the balance.

The Judge, in his charge to the jury, and in his judgment refusing a new trial, treats Warren, Lane & Company as a principal party to the transaction, and as selling the cotton to Hewitt. This error is fundamental. The evidence shows that they only acted as his agents in effecting the purchase in Baltimore. The transaction for the purchase of the cotton was clearly such as indicated in section 2596 of the Code, and would not have been enforced, as between Hewitt and the seller, in favor of either party.

1. But where that transaction has been completed, and Warren, Lane & Company seek to recover advances made by them, in good faith, as the agents of Hewitt, which advances were authorized or ratified by him, we think they are entitled to do so. Had a profit been made on the transaction, and had such profit come into the hands of Warren, Lane & Company, as it would have done, the authorities are clear, that Hewitt could have compelled them to pay it over to him: 18 Howard, 510; 2 Wallace, 79; Tenant vs. Elliott, 1 Bos. and Pul., 3; Farmer vs. Russell, Ib., 296; Thomson

*vs.* Thomson, 7, Ves., 473 ; Sharpe *vs.* Taylor, 2 Phillips Ch., 801.   See McBlair *vs.* Gibbs, 17 Howard, 232; *Ingram vs. Mitchell,* 30 Ga., 547.   And where money is lent for the payment of a debt originating in a contract, *which the law would not have enforced,* it can be recovered back : Alcinbrook *vs.* Hall, 2 Wils., 309 ; Barjeau *vs.* Walmsley, 2 Str., 1249.   See Armstrong *vs.* Toler, 11 Wheaton, 272.   If the law refuses to enforce a contract on the ground that it is against public policy, it does not necessarily follow that such contract is illegal.   A parol contract for the sale of lands will not be enforced, as against public policy.   But no one ever thought of calling such a contract illegal.   Money loaned to pay for land so contracted for could certainly be recovered, though the lender knew the purpose for which it was borrowed.   It is true, that where a statute makes the payment of money on a certain class of contracts an *unlawful act* and *attaches a penalty thereto,* the Court of King's Bench have decided that money lent to make such payment, with knowledge of the purpose on the part of the lender, cannot be recovered : Cannon *vs.* Bryce, 3 Barn. and Ald., 179.   But the Court is careful to draw the distinction between the statute then under consideration, which "absolutely prohibited the payment of money," and the statute against gaming, which "contains no prohibition against the payment of money lost at play." And hence, money loaned to pay a debt of this latter class has been held to be recoverable.   The distinction is, perhaps, narrow, but is fully supported by the authorities.

It is to be noted that the contract for the purchase of this cotton is not such an one as the Judge, who tried this case, supposes, to-wit: one in which it was at the option of the seller to deliver or not as he pleased.   Cotton sold to be delivered in any given month "at seller's option," means that *the time of delivery,* within the month, is at the option of the seller, not that he may deliver or pay the difference between the contract price and the market price at the time of delivery.   The witnesses, Russell and Sibley, are explicit on

this point, and the meaning here given to the phrase is the known commercial acceptation of the term. Such a contract, as Judge Gibson supposes this one to have been, not being before us, no opinion as to its validity or the validity of any collateral engagements growing out of it is expressed. This contract for the purchase of the cotton, then, not being illegal, but only one which it is not the policy of the law to enforce, Warren, Lane & Company, in our opinion, are entitled to recover all authorized advances made by them as Hewitt's agents and those made without authority from him, if he afterwards ratified their action in making the advances. The judgment of the Court below is therefore reversed, on the ground that the Court erred in charging the jury that "the sum advanced by defendants, or commissions claimed for the same, cannot be allowed;" this Court being of opinion that it should be left to the jury to say whether Hewitt authorized or ratified the action of his agents in making the advances, and if he did, they were entitled to have their setoff allowed to the extent of the authority given, and the ratification.