JOHNSTON BROTHERS & COMPANY *vs.* MCCONNELL *et al.*

1. When a fertilizer known as "Stonewall No. 1," was imported in casks, legally analyzed and inspected, and then taken from the original packages, manipulated with land plaster and other ingredients, then sacked and sold without further analysis or inspection as "Stonewall No. 2," it falls within the prohibitory law of 1874.
2. A note given for such fertilizer is void even in the hands of a *bona fide* purchaser because based upon an illegal consideration.

Contracts. Promissory notes. Consideration. Before Judge HILLYER. Clayton Superior Court. March Term, 1879.

Reported in the opinion.

J. T. SPENCE, for plaintiffs in error.

W. L. WATERSON ; J. D. STEWART, by H. C. PEEPLES, for defendants.

CRAWFORD, Justice.

1. The first question made by the record in this case is, whether a fertilizer known as Stonewall No. 1, which was imported in casks or barrels and legally analysed and inspected under the laws of Georgia, and then taken from their original packages, manipulated with land plaster and other ingredients, then sacked and sold without further analysis or inspection, falls under the prohibitory law of 1874?

The act declares "That it shall not be lawful to sell, or offer for sale, any fertilizer manufactured in this state, or to bring into the state for sale and distribution, any fertilizer manufactured beyond the limits of this state, unless, before offering for sale, or the sale or distribution of the same, there shall be an inspection and an analysis made of it by the inspector appointed under existing laws in the county where manufactured, or in the district or port

of entry where the same shall be introduced from without the state."

The fertilizer sold in this case was not the Stonewall, No. I, which had been analyzed and inspected, but it was taken from the original packages manipulated—increased in quantity—and perhaps lessened in value by the addition of land plaster and other ingredients, then sacked and sold as Stonewall No. 2, without other or further analysis or inspection. The original inspection of Stonewall No. I cannot certainly be applied to the new article after its change so as to dispense with this wise and wholesome provision of the law. It appears to us that this was one of the cases contemplated by the law, and where the tests were to be applied to ascertain its value, and to show that it had the capacity to increase the production of the soil. True, it is known that one-third of the quantity added to the original was land plaster, but there were other ingredients, what were they? and what was the compound produced after these additions? These were the very questions intended by the legislature that should be answered by the analysis and inspection, and if not done, whosoever should sell, or offer to sell, the same would be guilty of a crime, and subject the party to the penalty provided.

2. The second and only remaining question is, whether, falling under the provision of that act, a promissory note given for the purchase money of this fertilizer constitutes such an illegal consideration as to make it void in the hands of a *bona fide* holder for value and without notice?

At the common law illegal considerations were those that violated the rules of religion, moral or public decency, and such as entered into an act which was contrary to a law of parliament and contravened the public policy; the courts in such cases would not lend their assistance for the enforcement of such a contract. Such considerations are never respected by the law, and contracts founded upon them are unanimously condemned.

The public policy of this state was to prevent the sale of fertilizers manufactured within or without its limits, unless they were first analyzed and inspected, so as to give protection to one of her greatest interests, and prevent the fraudulent imposition of spurious and worthless compounds upon that portion of her people who pay full 100 cents in the dollar for every one they realize from the soil.

This court has passed upon the validity of such contracts between *the parties* thereto, and have held that they were void:

See *Kleckley vs. Leyden*, September term, 1879, not yet reported.

Leaving the common law principle out of view; indeed, even admit that under it illegal considerations do not vitiate contracts when they come in conflict with the rights of *bona fide* holders, yet when we turn to our legislation on the subject of their rights, we find that they are protected from all defenses that may be set up by the makers of notes, bills or drafts, except *non est factum*, gambling, immoral and *illegal consideration*, or fraud in the procurement thereof. Code, §2785.

It was maintained in the argument that because the act of 1874 failed expressly to declare such notes void, that they were thereby only void as between the original parties; we reply that the rule cannot be confined alone to that act, if, by any other it is so declared; moreover, the rule of law even in such cases is "that when a statute expressly or by *necessary implication* declares the instrument absolutely void, it gathers no vitality by its circulation in respect to the parties circulating it." Daniel on Negotiable Instruments, §197. If therefore driven to implication, which we have always recognized as dangerous ground, we feel that we should be abundantly sustained. But when we see that it is in direct contravention of public policy, in violation of a penal statute making it a crime, and above all, when we look to section 2785 of the Code,

we must, and do, pronounce such contracts not only void between the parties themselves, but that "they gather no vitality by being put in circulation."

To hold otherwise would be to have them transferred as soon as executed, enabling parties claiming to be innocent, and perhaps really so, to collect money upon a consideration the foundation of which would have its existence in the positive violation of a criminal law.

Let the judgment be affirmed.