## CUNNINGHAM *vs.* THE NATIONAL BANK OF AUGUSTA.

Contracts for the purchase and sale of cotton futures are gaming contracts. They are immoral, illegal, and contrary to public policy; and all evidences of debt executed on such consideration are void in the hands of any person, even though it be a *bona fide* purchaser before due and without notice.

( *a* ) This case differs from those in 45 *Ga.*, 591; 59 *Id.*, 26; 64 *Id.*, 184. Whether those rulings will be sustained if reviewed. *Quære.*
November 27, 1883.

Futures. Contracts. Gaming. Public Policy. Promissory Notes. Before Judge RONEY. Richmond Superior Court. October Adjourned Term, 1882.

The National Bank of Augusta brought complaint against Cunningham on a promissory note for $3,500 due twelve months after date, by defendant, to Warren, Wallace & Company, or order, and indorsed by them. Defendant filed the pleas set out in the decision, which were stricken on demurrer, leaving only the plea of the general issue of file. A verdict was rendered for the plaintiff, and defendant excepted.

FOSTER & LAMAR, for plaintiff in error, cited Code, §2776; 56 *Ga.*, 203; 57 *Id.*, 410; 37 Am. R., 607; 101 U. S., 557, 562; Jones *vs.* Radatz, S. C. Minn., Oct. 1880, 10 Reporter, 737; 6 Rich., 297; 84 N. C., 24 (37 Am. R., 604); 33 Ill., 372; 63 Mo., 34 (21 Am. R., 440); 64 Mo., 476; 4 Sneed, 213; 47 Ala., 413; 6 Cowen, 118; 2 Mich., 130; 77 Penn. St., 131; 3 Barr, 346; 37 Mass., 132; 2 Strange, 1271; 84 Penn. St., 407 (24 Am. R. 201); 2 Miles, 442; 4 Mees. & W., 168; 4 B. & Ad., 619; 1 Dan. Neg. Inst., §§53, 59, 60; Whitwell *vs.* Winslow, S. C. Mass., March, 1883, Alb. L. J., Sept., 1883, p. 177; 27 Alb. L. J., 447; 5 *Ga.*, 165; 2 Rose, 225; 10 Serg. & R., 94; 4 Mass., 245; 11 Iowa, 172; 29 *Id.*, 501; 23 Wend., 71; 50 *Ga.*, 70; 63 *Id.*, 54, 56; 67 *Id.*, 591; Code, §2057 (f); 2057 (a); 50 *Ga.*, 73-75; 59 *Id.*, 26; 45 *Id.*, 501; 64 *Id.*, 184; 68 *Id.*, 124;

Code, §§2638, 2753; 1 Dan. Neg. Inst., §807 and cit.; 65 *Ga.*, 131; Code, §§2749, 2638, 2750; 65 *Ga.*, 210, 215; 64 *Id.*, 188; 83 Ill., 33 (25 Am. R., 349, 353, 355); 1 Add. Con. (1881), p 415; 55 Penn. St., 294; 89 *Id.*, 8, 250, 38; 68 *Ga.*, 124, 296; Code, §2785; 65 *Ga.*, 131; 8 *Id.*, 555; 3 *Id.*, 182-3; 19 Am. Dec., 516; Code, §§2648, 2750, 2852, 2753; 11 Reporter, 799; 52 Wis., 593; 83 Ill., 33 (25 Am. R., 349-353); 14 Reporter, 203, 172; 16 Conn. L. J., 453; 55 Tenn. St., 294; 68 *Id.*, 173; 89 *Id.*, 89; 87 *Id.*, 63; 27 Alb. L. J., 354; 65 Me., 574; 11 Hun, 473; 71 N. Y., 426; 56 *Id.*, 230; 79 Ill., 328; 6 Mo. App., 296; 39 Mich., 337; 40 *Id.*, 432; 101 Mass., 145; 7 Bliss., 540, 338; 7 Neb., 125; 13 Fed. R., 263; 8 Brad., 467; 5 Moore, 571; 11 Reporter, 546; 64 *Ga.*, 188; 65 *Id.*, 215; 68 *Id.*, 124, 296; Code, §2785; 65 *Ga.*, 129-131; 14 Reporter, 203.

FRANK H. MILLER, for defendant, cited Code, §4254; 40 *Ga.*, 323; 64 *Id.*, 694; 68 Id., 578; Code, §2787; 60 *Ga.*, 90; 61 *Id.*, 208; 37 *Id.*, 78; Code, §2639; 42 *Ga.*, 639; Code, §1474; Rev. Stat. U. S., §5136; 8 *Ga.*, 274; 22 *Id.*, 246; 37 *Id.*, 66; 50 *Id.*, 110; Code, §2785; 57 *Ga.*, 274; 52 *Id.*, 621; Merritt *vs.* Bagwell, S. C. *Ga.*, Feb. Term, 1883; Code, §405; 22 *Ga.*, 246; 21 *Id.*, 195; 65 *Id.*, 129; 45 *Id.*, 509; 59 *Id.*, 25; 64 *Id.*, 188; 68 *Id.*, 126; 44 *Id.*, 123; 45 *Id.*, 134; 57 *Id.*, 272; 10 Fed. R., 243; 62 *Ga.*, 762; 59 *Id.*, 685; 57 *Id.*, 179; 60 *Id.*, 456; 62 *Id.*, 742-3; 69 *Id.*, 661; 31 Am. R., 591-2, S. C. 2 Lea., 113; 32 Am. R., 119 and note, 122; 69 *Ga.*, 687; 45 *Id.*, 164; Code §2753; 21 *Ga.*, 46; 1 *Kelly*, 68; 65 *Ga.*, 245; 69 *Id.*, 825; 1 *Id.*, 134; 42 *Id.*, 287-323; 45 *Id.*, 144; Code, §3400; 63 *Ga.*, 531; 57 *Id.*, 350; 62 *Id.*, 241; 58 *Id.*, 583; 41 *Id.*, 331; 57 *Id.*, 99; 45 *Id.*, 164; 1 *Kelly*, 392; 69 *Ga.*, 722; 66 *Id.*, 398; 44 *Id.*, 184; 8 Wheat., 398; 65 *Ga.*, 221, 386; 68 Id., 628; Code, §3470; 56 *Ga.*, 210; 66 *Id.*, 398, 639, 102; 3 Pet., 36; 8 Wheat., 338-354; 63 *Ga.*, 56; 28 *Id.*, 543; Code, §1, par. 4; 69 *Ga.*, 437; 64 *Id.*, 184; 15 Reporter, 737; 7 Allen, 387; 100 U. S. R., 239; 91 *Id.*, 29; 96 *Id.*, 268; 104 *Id.*, 274-279; 56 *Ga.*, 203-207; 68 *Id.*, 604; 19 Wall., 560;

Code, §2776; 61 *Ga.*, 69; 54 *Ga.*, 119; 55 *Id.*, 229; 59 *Id.*, 240; 69 *Id.*, 773; 49 *Id.*, 604, 57 *Id.*, 333; 65 *Id.*, 123; 15 *Id.*, 128; 50 *Id.*, 508, 381; 29 *Id.*, 700; 16 *Id.*, 591; 42 *Id.*, 639; 101 U. S., 14; 100 *Id.*, 239; Code §2785; 4 *Ga.*, 287; 51 *Id.*, 17; 8 *Id.*, 421; 66 *Id.*, 651; 69 *Id.*, 627; 63 *Id.*, 479; 53 *Id.*, 227; 56 *Id.*, 138; 3 Wall., 345; 59 *Ga.*, 355; 66 *Id.*, 148, 398, 638; U. S. Rev. Stat., §§5197, 5200, 5198; 96 U. S., 268; 104 *Id.*, 271; Code §2051; 7 Am. R., 156; 2 Am. Dec., 155; 13 Am. Dec., 710; 9 Neb., 11; 68 *Ga.*, 629; Code, §§3654, 1970; 56 *Ga.*, 165; 103 U. S. 99; 98 *Id.*, 624; 16 Reporter, 449; 59 *Ga.*, 105; 65 *Id.*, 210; 45 *Id.*, 501; 59 *Id.*, 25; 15 Reporter, 699; 68 *Ga.*, 126; 49 *Id.*, 490; 66 *Id.*, 102; Code §4286.

BLANDFORD, Justice.

The bank sued Cunningham on a promissory note, to which action the defendant pleaded, in substance, that the note was given to Warren, Wallace & Co., the payees, to make good and pay any losses that might accrue in a certain wagering, gambling, immoral and illegal contract for the purchase of certain cotton, with the intention and understanding by both parties that the cotton was not to be delivered to, or received by, defendant; that there was to be a settlement at a future day, when the defendant was to receive or pay the difference between the contract price and the market price on the day the settlement was to be made, etc. This plea was demurred to by the plaintiff, and the court sustained the demurrer, upon the ground that the plea did not aver that plaintiff was not a *bona fide* holder of the note sued on before due, and without notice, the note being payable to Warren, Wallace & Co., and due twelve months after date; and dismissed defendant's plea. To this ruling the defendant excepted, and the same is now here assigned as error.

It is manifest that the consideration of the note sued on is for and on account of dealings commonly called "futures." Is such a transaction in the nature of gaming? If so, then the

note was void at the time it was given, and no subsequent transaction could revive or give vitality, or any legal validity, to a contract thus tainted and poisoned at its birth. It came into the world still-born, though odorous with crime, and no subsequent transactions in relation thereto could cleanse it or give it any vitality, into whosesoever hands it might come. A note tainted as this is said to be will be considered as giving notice itself of its illegal and criminal birth and origin, to whomsoever it may come. The plea expressly alleges the transaction to be " a wagering and gaming contract " But what is the transaction termed "futures"? It is this: one person says that I will sell you cotton at a certain time in the future for a certain price; you agree to pay that price, knowing that the person you deal with has no cotton to deliver at the time, but with the understanding that when the time arrives for delivery you are to pay him the difference between the market value of that cotton and the price you agreed to pay, if cotton declines, and if cotton advances, he is to pay you the difference between what you promised to give and the advanced market price. If this is not a speculation on chances, a wagering and betting between the parties, then we are unable to understand the transaction A betting on a game of faro, brag, or poker, cannot be more hazardous, dangerous or uncertain. Indeed, it may be said that these animals are tame, gentle and submissive, compared to this monster. The law has caged them, and driven them to their dens; they have been outlawed, while this ferocious beast has been allowed to stalk about in open mid-day, with gilded signs and flaming advertisements, to lure the unhappy victim to its embrace of death and destruction. What are some of the consequences of these speculations on " futures ?" The faithful chroniclers of the day have informed us, as growing directly out of these nefarious practices, that there have been bankruptcies, defalcations of public officers, embezzlements, forgeries, larcenies, and death. Certainly no one will contend for

one moment, that a transaction fraught with such evil consequences is not immoral, illegal, and contrary to public policy.   In the case of Rudolph *vs.* Winters, 7th Nebraska, 126, the Supreme Court of that state held, "that a contract to operate in grain options, to be adjusted according to the difference in the market value thereof, is a contract for a gambling transaction which the law will not tolerate.    It is *contra bonos mores*, and against public policy."    We recognize this ruling to be sound, and we adopt the same. This was also ruled by the Supreme Court of Illinois, 79 Ill., 328; likewise in Wisconsin, 55 Wis., 354; 52 Wis., 593; 83 Ill., 33; 58 Iowa, 713; Hawley *vs.* Bibb, Supreme Court of Ala., Decr. Term, 1881; L. Reporter, 172; 65 Maine, 574; 11 Hun, 473; 71 N. Y., 426; 56 *Ib.*, 230; 6 Missouri App., 206; 39 Mich., 337; 40 *Ib.*, 432; 101 Mass., 145; 7 Biss., 540, 338; 8 Brad., 467; 5 Moore, 571; 68 *Ga.*, 124, 296.

The Supreme Court of Pennsylvania, in Bruce's Appeal, 55 Penn. State R., 298, 299, Thompson, J., delivering the opinion say, " Anything which induces men to risk their money or property, without any other hope of return than to get for nothing any given amount from another, is gambling, and demoralizing to the community, no matter by what name it may be called.   It is the same, whether the promise be to pay on the color of a card or the fleetness of a horse, and the same numerals indicate how much is lost or won in either case, and the losing party has received just as much for the money parted with in the one case as the other, viz., nothing at all.   The lucky winner is, of course, the gainer, and will continue so until fickle fortune in due time makes him feel the woes he has inflicted on others.   All gambling is immoral; the losses incident to the practice disclosed * * * have contributed more to the failures and embezzlements of public officers, clerks, agents, and others acting in fiduciary relations, public and private, than any other known, or, perhaps, all other causes; that in the train of its evils there is a vast amount

of misery and suffering by persons entirely guiltless of any participation in the cause of it." To our mind, this is a true statement of the transaction set forth in the pleas of the plaintiff in error; nothing that we could say would add to the picture so ably drawn by the learned judge. See also 68 Ib., 173; 89 Ib., 89; 87 Ib., 63.

It is insisted by the able and distinguished counsel for the defendant in error that, as the bank was a *bona fide* purchaser before due, without notice of the consideration of the note sued on, they are protected from, and not affected by, the defence set up by plaintiff in error.

To this position our Code, §2753, is a sufficient reply; it is provided as follows: " Gaming contracts are void, and all evidences of debt or incumbrances or liens on property executed upon a gaming consideration, are void in the hands of any person." 68 *Ga.*, 124, 296; Code, §2785; 65 *Ga.*, 131; 1 Daniel on Negotiable Instruments, §807.

While it is true that this court has decided that an agent may recover from his principal moneys expended in the purchase of cotton futures for him at his instance and request, it will be observed that the present case does not involve the principle so decided. See 45 *Ga.*, 501; 59 *Ib.*, 26; 64 *Ib.*, 184. We are not prepared to say that we will be bound in the future by the decisions last referred to, when the same are reviewed as the law directs, or what our judgment may be upon such consideration. The judgment of the court below sustaining the demurrer to the pleas of the plaintiff in error, the defendant below, is reversed.

Judgment reversed