THE NATIONAL BANK OF AUGUSTA *vs.* CUNNINGHAM.

1. When this case was before the court on a former occasion, it was held that contracts for the purchase and sale of cotton futures were gaming contracts, and were immoral, illegal and contrary to public policy; and that all evidences of debt executed on such a consideration were void in the hands of any person, even though it be a *bona fide* purchaser before due and without notice. These principles are now reaffirmed.

2. Where a broker is privy to such a wagering contract, and brings the parties together for the very purpose of entering into the illegal agreement, he is *particeps criminis*, and cannot recover for services or losses incurred by himself in forwarding the transaction. Where a note was given to brokers for money which was to be expended by them in purchasing cotton futures for and on account of the maker, and no money went into his hands, such note was void.

(*a.*) The case in 45 *Ga.*, 501, differs from this; but in so far as it conflicts with the present ruling, it is overruled.

3. Where one of the payees of the note testified that he had advanced to the maker $1,000 to pay his sisters for their interest in certain real estate, the deed from his sisters to him, which recited five hundred dollars as its consideration, was admissible in evidence, in connection with the evidence of the attorney who drew it, who testified that he wrote the deed; that he was the attorney of the payees of the note, and after examining the title to the realty, he found that the maker's sisters still owned an interest threin, and that it was necessary to put the title in him, so that his deed to secure the note might be good security; and that his recollection was that the maker conveyed other property to his sisters for their interest. The deed, in connection with this testimony, tended to contradict and impeach the payee of the note.

January 12, 1886.

Cotton Futures. Contracts. Consideration. Public Policy. Promissory Notes. Evidence. Before Judge RONEY. Richmond Superior Court. October Adjourned Term, 1884.

Reported in the decision.

FRANK H. MILLER, for plaintiff in error

FOSTER & LAMAR, for defendant.

BLANDFORD, Justice.

1, 2. When this case was before this court at September term, 1883, as found reported in 71 *Ga.*, 400, it was then held that contracts for the purchase and sale of cotton futures are gaming contracts. They are immoral, illegal and contrary to public policy; and all evidences of debt executed on such consideration are void in the hands of any person, even though it be a *bona fide* purchaser before due and without notice. What was then held and decided we now adhere to.

The note in this case was given to Warren, Wallace & Company, who are the payees. The evidence shows that the consideration was for money which was to be expended by them in purchasing cotton futures for and on account of Cunningham. No money ever went into his hands, but Warren, Wallace & Company inaugurated, set on foot and consummated this nefarious transaction. In this respect this case differs from the case in 45 *Ga.*, 501.

The Supreme Court of the United States, in Irwin *vs.* Williar and another, 110 U. S. R., 499, held, "When a broker is privy to such a wagering contract, and brings the parties together for the very purpose of entering the illegal agreement, he is *particeps criminis*, and cannot recover for services rendered, or losses incurred by himself in forwarding the transtction."

We recognize the principle here laid down as good law, founded upon high principles of morality and sound public policy. The agency of Warren, Wallace & Company, being connected as they were in bringing about this transaction, and carrying the same through, rendered them

*particeps criminis*, so that the contract with Cunningham, growing out of the illegal transaction, is void. Anything that may have been decided in 45 *Ga.*, 501, which is in conflict with what is here decided, may be considered as overruled; indeed, we much doubt the correctness of that decision.

3. Was the deed from Cunningham's sisters to him, of their interest in the Millview place, properly admitted in evidence to contradict or impeach Wallace, who had testified that he had advanced to Cunningham one thousand dollars to pay his sisters for their interest in the Millview property, the deed reciting five hundred dollars as the consideration? We are of the opinion that the deed was properly admitted in evidence, taken in connection with the testimony of Colonel Black, who testified that he wrote the deed; that he was the attorney of Warren, Wallace & Co.; that when he examined the title to the Millview place, he found that Cunningham's sisters still owned an interest in the property, and it was necessary to put the title in Cunningham so that his deed to Warren, Wallace & Co. to secure the payment of the note might be good security; his recollection was that Cunningham conveyed other property to his sisters for their interest in the Millview place, Wallace having testified that the thousand dollars thus advanced to Cunningham constituted a part of the consideration of the notes sued on. The testimony of Black, in connection with the deed admitted in evidence, tended to contradict Wallace, and also to show that no such consideration as one thousand dollars entered into the note sued on.

It is not necessary to notice any other of the assignments of error, as what we have said rules and controls this case

Judgment affirmed.