CLARKE, HARRISON & COMPANY *vs.* BROWN.

Where a principal deposited money with his agents to be used in the purchase of futures in pork and grain, he could recover from such agents the amount so deposited, in an action for money had and received. He could not set up the illegal contract to recover profits realized thereunder, nor could the agents set up the illegal contract for the purpose of defeating a recovery by the principal of the money deposited with them, and which was held by them.

(a) It did not matter whether the money sued for by the principal was the identical money furnished by him, or whether the agents deposited the money so furnished in bank with other deposits of theirs, and used such money for filling margins for futures, and afterwards replaced them to the credit of the principal. The question is, whose money is it, the agents' or the principal's? Nor does this stand in the position of an executed contract, in which both parties are *in pari delicto*.

(b.) This ruling does not conflict with the code or the previous rulings of this court, the action not being to enforce an illegal contract, but to recover money in the hands of agents belonging to their principal.

October 19, 1886.

Contracts. Futures. Principal and Agent. Before Judge MARSHALL J. CLARKE. Fulton Superior Court. March Term, 1886.

C. I. Brown brought suit against Clarke, Harrison & Co., alleging that he had placed in their hands money for the purpose of handling grain for him; that their books showed that they had in hand $724.90 belonging to him; and that he had demanded it, but payment had been refused.

The defendants pleaded the general issue; and that this

was a transaction in futures and was illegal, and no recovery could be had.

The evidence for the plaintiff was, in brief, as follows: About July, 1884, he deposited with defendants at different times $1,000 to be used as margins in "future" contracts. Becoming alarmed at their financial condition, he closed his contracts and demanded his money. They at first admitted that the amount sued for was due him, but failed to pay and afterwards refused payment. The amount sued for is the balance of plaintiff's original deposit, and not any profits from the dealing in futures.

The evidence for the defendants was, in brief, as follows: About the amount sued for was put up by the plaintiff for the purpose of buying futures. Defendants deposited it in bank to their credit, and bought grain and pork for him for future delivery. The market was adverse. All the money was exhausted and about $200 besides. Defendants carried the contracts for a time for plaintiff. The market then reacted, and the amount sued for represented the profit to the credit of plaintiff at the time the contracts were closed.

There was some testimony as to a counter-claim by defendants, not material here.

The jury found for the plaintiff. Defendants moved for a new trial on the following grounds:

(1)–(3.) Because the verdict was contrary to law and evidence.

(4.) Because the court charged as follows: "If you believe from the evidence that as he, the plaintiff, claims in this case, he did deposit various sums of money with the defendants, for them to engage in trading in grain and other products on his account; that they received this money and did engage in such trading; and that, as the result of such trading, there came into the hands of these defendants, for the benefit of the plaintiff, a certain sum of money, and that the plaintiff demanded of them this

sum of money, and the defendants refused to give it to him, then the plaintiff would have a right of action against them for it.   On the other hand, if you believe that these facts are not supported by the evidence, your verdict ought to be for the defendants in this branch of the case."

(5.) Because the court refused to charge as follows: "If it should appear that the plaintiff employed the defendants as his agents to buy and sell contracts in grain and pork, commonly called 'futures,' and that the moneys deposited by the plaintiff with the defendants now sued for were deposited to make good and pay any losses that might accrue or grow out of said purchases and sales; that said moneys were consumed in the payment of margins on said contracts; that the parties knew that no grain or pork was to be delivered or received by the plaintiff, and that there was to be a settlement at a future day, when the plaintiff was to receive or pay the difference, then the contract would be illegal, immoral, and no rights could grow out of the same in favor of the plaintiff."

The motion was overruled, and the defendants excepted.

B. F. ABBOTT, for plaintiffs in error, cited: Code, §§2191, 2750, 2633; 3 *Ga.* 181; 55 *Id.* 235, 262; 41 *Id.* 315; 71 *Id.* 400; 75 *Id.* 366."

W. I. HEYWARD, by WALTER R. BROWN, for defendant, cited: 72 *Ga.* 223; 41 *Id.* 675; 39 Barb. 152; 7 Heisk. 137; 2 Wall. 81; 30 *Ga.* 547; 45 *Id.* 501; 59 *Id.* 25; 68 *Id.* 299; Code, §2753; 1 Wait's Act. & Def. 225; Ewell's Ev. Ag. 436.

JACKSON, Chief Justice.

The suit is brought by Brown against Clarke, Harrison & Co. for the recovery of some seven hundred dollars deposited with them to fill margins in the purchase of contracts in pork and grain for future delivery.   The jury

found for the plaintiff the sum sued for; the defendants excepted, and on the denial of a new trial, the case is before us.

The point made is, whether money deposited by a principal to agents to purchase futures can be recovered by the principal from the agents, the same not being the fruits of the gambling transaction, as denominated by this court— not profits made by the agents for the principal over and above the sum deposited with them, but an amount of money within the sum total originally entrusted to the agents. It is immaterial whether it is the identical money so deposited, or deposited in bank with other deposits of the agents therein, and used by them and replaced by other funds, or used for filling margins for futures and afterwards replaced by the agents to the credit of the principal; the question is, whose money is it, the agents' or the principal's?

If it had been won as profits on the venture, it could not have been recovered back from agents, who got it for the principal with the use of the principal's money on the illegal venture, because that would be money recovered on a chance venture, and considered by this court as equivalent to a gaming venture. But when it is not at all the profits made on futures; when no profits at all were realized, but when the entire venture was over, this money was held by the agents, if, on the final accounting, it remained unspent for their principal, it was his money, won from nobody, but entrusted to his agents, for an illegal purpose it is true, yet left in the hands of the agents, after the game is over, as the sum or part of the sum he first entrusted to them. It is true that upon wagering contracts there can be no recovery. Code, §2750. But this is not a suit upon a wagering contract. It is a suit for money in the hands of agents by the principal, furnished him to buy and sell grain for him, and it is alleged that this money now sued for is the money so furnished. There is nothing illegal in the contract set up in the declaration. It is the defence

v 77—39

that sets up the illegal contract. All that the plaintiff has to prove, in order to recover, is that these agents have his money that he furnished them, and refuse to turn over his own to him. Thereupon the agents say, it is true we have your money, but you furnished us it to speculate in futures for you, and you cannot recover it back, because you furnished it for an illegal purpose. The agents cannot set up the illegal contract, because they made it and got a consideration for using the money illegally, and are *particeps criminis*. Just as if it had been necessary for the plaintiff—the principal—to use the illegal contract to recover the money, which would have been necessary had he sued for the profits of the venture; so it is illegal for the agents to use it to defend the suit for money they have belonging to the principal. In *Ingram vs. Mitchell*, 30 *Ga.* 547, principles are ruled and authorities cited approvingly, which seem to us to control this case. "Whenever the plaintiff can make out his case without invoking the illegal contract to his aid, he is entitled to recover." "Where an agent receives money from his principal upon an illegal contract, he cannot avail himself of that defence in an action brought against him by the principal for money had and received to the plaintiff's use, especially when those who paid over the money to the agent do not desire that he should retain it." "When money is actually paid over upon an illegal contract, it is clear that it cannot be recovered back, the contract being executed, and both parties being *in pari delicto*." "A party may, in some cases, be allowed to retain money which was due to him *ex equo et bono*, but which he could not have recovered at law; yet he never can be allowed to retain money to which he has no claim whatever against the true owner."

It does seem that these principles decide this case. The plaintiff need not invoke the contract at all to help him. It is wholly immaterial for what purpose the agents got it. That they got it to be used for him is enough; that they got and hold his money is enough, without any agreement

about its use. The defendants cannot avail themselves of the illegal contract to defend the action for the money they hold as agents. The money is not here paid over upon an illegal executed contract, so as to bar its recovery back. This is a continuing executory contract by which the money is put in the hands of the agents to be used for the principal, and not a payment of money to the agents upon a past executed consideration. The agents cannot be allowed here to keep this money, to which they have no claim upon earth against this principal. They must pay it over, if *Ingram vs. Mitchell*, and Tenant *vs.* Elliott, 1 Boss. and Pul. 3, cited approvingly, be law. In the cited case, Chief Justice Eyre said : " The question is, whether he who had received money to another's use on an illegal contract can be allowed to retain it, and that not even at the desire of those who paid it to him. I think not." And Mr. Justice Buller said : " Can the defendant in conscience keep the money so paid ? For what purpose should he retain it ? To whom is he to pay it over ? Who is entitled to it but the plaintiff ?" All this is approved as law by this court in *Ingram vs. Mitchell*, and these utterances of these justices, sanctioned by this court, cover the case at bar.

Nor is there anything in 45 *Ga.* 501 ; 59 *Id.* 25, or 68 *Id.* 299, or the more recent decisions that question the cases in the 45th and 59th *Georgia Reports* which militates against, and collides with, the ruling in favor of the recovery here.

The code, in sections 2191, 2638 and 2570, does not collide with this ruling. The first is that " no rights can arise to either party out of an agency created for an illegal purpose." The right to recover this money does not arise out of this illegal contract. The second, 2638, is in substance that a contract for futures, no skill or labor entering into the contract, is a pure speculation upon chances, contrary to the policy of the law and cannot be enforced by either party. This is not an effort to enforce a contract for futures,

but it is to recover money from the agents furnished them to enter into the contract for futures. Section 2750 is, that wagering contracts cannot be enforced. This is not such a contract between this principal and these agents, but it is money furnished the agents, to be used to buy futures, by their principal, and which the principal seeks to recover, and can recover as his money in his agents' hands without setting up the wagering contract or relying upon it at all. Nor do 3d *Ga.* 176, 41st *Id.* 315, 55th *Id.* 235 and 262, 68th *Id.* 124, 71st *Id.* 400, and the same case decided January 12th, 1886 (75 *Ga.* 366), collide with this judgment. They are all reconcilable with this and stand upon facts that distinguish them from this case. The able counsel for plaintiff in error cites them, and we have carefully examined them in deference to his ability and research.

We think that the facts of the case require the verdict, from our standpoint in applying law to them; and as this is the only point argued and pressed before us, we affirm the judgment.