48066. JOHNSON, LANE, SPACE, SMITH & COMPANY, INC. v. LENNY.

ARGUED APRIL 2, 1973 — DECIDED APRIL 13, 1973 — REHEARING DENIED MAY 9, 1973 —

*Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Barry Phillips, Duane C. Aldrich,* for appellant.

*Rubin, Landrey & McLarty, Martin Rubin,* for appellee.

DEEN, Judge. The conduct of both parties to this action has been questionable, and the only issue is upon whom as a matter of public policy the loss must fall. 14 USCA § 78g (c) (1) provides that it shall be unlawful for any broker to extend credit to a customer on any nonexempt security in contravention of the regulations of the Board of Governors of the Federal Reserve System. Regulation T of that system (12 CFR § 220.8 (d)) required at the time of this transaction that there be an adjusted debit balance of a general customer account of 70% margin before a short sale could be legally effected. Not only was there no such percentage; there was no such account. Although the plaintiff contends that Regulation T was not violated or that, if it was, the violation was merely technical and inadvertent, it is difficult to see how this position can

be sustained since the plaintiff neither liquidated within the five business day interval permitted under 12 CFR § 220.3 (b)(1) or the seven day interval under § 220.4 (c) (2) applying to special accounts. Under 15 USCA § 78cc a contract in violation of the Securities Exchange Act of 1934 is "void as regards the rights of any person, who, in violation of any such provision, rule, or regulation shall have made or engaged in the performance of any such contract." As pointed out in "Federal Margin Requirements as a Basis for Civil Liability," 66 Columbia Law Review 1462, and the various cases compiled therein, Regulation T directs itself to the broker, not the customer, since the primary purpose of the Act is to control speculative manipulation of credit and in the majority of cases it is the broker who advises or induces the customer to extend himself. Where the broker has been misled by the fraud or misrepresentation of a customer of the latter's agent, as in *A. M. Kidder & Co. v. Clement A. Evans & Co.,* 111 Ga. App. 484 (142 SE2d 269), s.c., 117 Ga. App. 346 (160 SE2d 869),the penalty will not be invoked. Here the broker was not misled. The firm knew the sale was intended as a short sale and that there was no margin account. It unfortunately relied upon the word of an unknown prospective customer that he would purchase and replace the stock within two days. This is exactly what Regulation T is set up to avoid. Pearlstein v. Scudder & German, 429 F2d 1136 and cits. While the dissent in Pearlstein, supra ("the . . . opinion . . . seems to me to reach a conclusion that shocks the conscience and wars with common sense") has much to recommend it, even to the extent that had the facts been as involuted and suggestive here as they were there we might have reached a different conclusion, nevertheless, as applied to a situation as clearly violative of every basic requirement for margin trading as exists here, we incline to follow the majority: "In our view the danger of permitting a windfall to an unscrupulous investor is outweighed by the salutary policing effect which the threat of private suits for compensatory damages can have upon brokers and dealers above and beyond the threats of governmental action by the Securities and Exchange Commission." P. 1141. Whether the suit is by a customer for damages or by the broker for debt is of no concern; the question is the substantive liability involved. The customer of course may only sue in tort for damages, and such action is not one spelled out either in the statute or Regulation T but is based on court made law sounding in tort and based on the theory that A has been damaged by an act of B in violation of law. Where the broker sues (and the

complaint here is in two counts, one in contract and one in tort based on misrepresentations), the contract action is precluded by a material and deliberate violation of Regulation T in the absence of very special circumstances. The tort action accompanying rescission (as in *Kidder,* supra) may proceed on a theory of fraud, misrepresentation, conspiracy, etc. It was held in J. Cliff Rahel & Co. v. Roper, 186 Neb. 34 (180 NW2d 682), based on this theory, that contracts in contravention of prescribed margin requirements are "not void but voidable at the option of the innocent party." There the customer represented to the broker that he did in fact own the stock sold short, and the broker acting on this misrepresentation was allowed recovery. Obviously, Roper was not an innocent party. Lenny, here, is "innocent" only in that he did not attempt to deceive the broker at the moment of purchase, except as to the billing which in no way affected the broker's actions. He now wishes to renege on his contract and force the broker to shoulder his loss because as a matter of public policy the contract is void as to him. Although one sided, this may be compared with illegal wagering agreements under Code § 20-505. Cf. *Anderson & Co. v. Holbrook,* 128 Ga. 233 (2) (57 SE 500).

Another line of cases culminated in Moscarelli v. Stamm, 288 F Supp. 453, where certain customers and certain employees of the defendant brokers engaged in a series of purchases and sales in violation of margin requirements, the customers allegedly relying on the representations of certain of the employees that they would not sell the collateral put up by the customers on occasions when it fell below margin requirements. In effect, a conspiracy between both parties to defeat the purposes of the Act, accompanied by a fairly long and complicated course of trading, was alleged. The court held to the viable concept that in such a tort action common law tort concepts of causation, proximate cause, and contributory negligence should be considered and the court refused to foreclose the broker's defense by summary judgment. The two threads of thought represented respectively by Moscarelli and Pearlstein, supra, were considered in Avery v. Merrill, Lynch, Pierce, Fenner & Smith, 328 F Supp. 677, an action by a customer suing for rescission and damages where the broker, when her margin account fell beneath the amount required, failed to liquidate by the fifth day thereafter and thereby caused increased loss on short sales due to a rising market. The court agreed with Pearlstein, supra, that rescission should be allowed as a penalty, where any participation by the investor in the prohibited conduct was without fraud or

deceit. Of Moscarelli, supra, it observed that the rule would be different where fraudulent conspiracy was involved, but that, absent affirmative fraudulent misconduct either in conjunction with or by misleading the broker, the parties could not, in view of the purposes for which the Securities and Exchange Act is intended, be considered in pari delicto.

In the present case the defendant, whether knowingly or not, proposed to the broker that it sell stock short which he would repurchase within two days, in complete violation of margin requirements. This is not a case where the margin percentage was too low, but where there was no margin, no account, and no previous course of business. The broker unfortunately relied upon the investor's promise to repurchase, but this is exactly what the law says it may not do. It had the burden of establishing its right to recover, under either a contract or tort theory, and failed to carry that burden. The trial court accordingly did not err in directing a verdict for the defendant.

*Judgment affirmed. Bell, C. J., and Quillian, J., concur.*