## SMITH, administrator, *v.* WOOD.

1. A promissory note given for the purchase-price of a patent right, which fails to comply with the act approved December 31, 1897, in that it does not express upon its face "the consideration of the same, stating the thing or article for which the same was given," is not void in the hands of a bona fide holder.
2. The judgment was not contrary to the evidence.

Argued April 26, — Decided July 11, 1900.

Complaint. Before Judge Harris. City court of Floyd county. August 29, 1899.

C. D. Wood sued S. W. Smith upon a promissory note, a copy of which, so far as material to the questions to be considered, was as follows:

. "State of Georgia, Floyd County. On the first day of November, 1898, I promise to pay to the order of Q. T. Gregory, for a patent right, the sum of two hundred and ten dollars, value received, with interest from March 16th, 1898, until paid, at the rate of eight per cent. per annum. . . Witness my hand and seal this 16th day of March, 1898. S. W. Smith (L.S.)

"Signed, sealed, and delivered in the presence of

R. B. McArver. L. W. Early, N. P. & J. P."

There was a mortgage upon realty embodied in the note. Upon it was the following indorsement: "For value received, I hereby transfer this note and mortgage to Chas. Wood, this Apr. 7th, 1898, without recourse. Q. T. Gregory."

The defendant, after denying in his plea that he was indebted to the plaintiff as alleged in the petition, pleaded: "2d. For further plea and answer defendant says that said note as executed is based upon an illegal and criminal transaction, for that the same was taken by the payee, one Q. T. Gregory, for the purchase-price of all the right, title, and interest which said Q. T. Gregory had in letters patent No. 476,127, issued to Charlie Cardwell on the 31st day of May, 1892, by the United States of America, for improvements in gates and automatic latcher; so far as the right of said Gregory appertained to, for and in the counties of Floyd and Bartow in the State of Georgia. 3d. That said Gregory failed to have expressed on the face of said note the consideration of the same, stating the thing or articles for which said note was given. 4th. Defendant alleges that said note was made to and taken by said Gregory; that his failure to express the consideration thereof in the face thereof was a crime under the laws of Georgia; and for this reason said note is illegal and void. 5th. For further plea and answer defendant says that the consideration for said note has partially failed, to wit one half, in that said Gregory failed to convey to defendant the right under said patent to the county of Bartow, as a consideration for said note." The plaintiff demurred to this plea, upon the grounds, that the same does not set up any cause of defense; and that the declaration shows that the consideration of the note is expressed in its face, and shows that such consideration is a patent right. The demurrer

was sustained as to the second, third, and fourth paragraphs of the plea ; and the defendant filed exceptions pendente lite.

Upon the trial the following evidence was submitted : The plaintiff introduced the note sued on. The defendant testified : "The consideration of the note sued on was a patent right for a gate, for the counties of Floyd and Bartow. I never got any showing for it. My first trade was with J. R. Oglesby, January 13, 1898. I then bought of him the right for Floyd for $125. Afterwards I met Q. T. Gregory, and agreed with him to take Bartow as well, he agreeing to make a discount of 40 per cent. on what I had paid for Floyd. He said that he would destroy the note and deed that had been executed in January, and give me a deed to Bartow and Floyd together; and this I thought he had done until I came to look at the papers last December, when I found I had only the papers I got in January, 1898, which only called for Floyd. Then on April 7, 1898, I bought of Gregory a half-interest in six counties, Pike, Upson, Talbot, Taylor, Marion, and Macon, for $125, he agreeing to go with me and help sell the said counties. This he never did, and I have never seen him since, though I have written him. I did not know that Bartow had been stuck into the last paper. That $210 note ought to be for only $200, anyhow, even if he had deeded me the whole of Bartow, as he was to discount Bartow 40 per cent. on what I had contracted to pay him for Floyd. In the shuffle these are the only two papers I got" (indicating the two assignments of territory hereinafter abstracted). Cross-examination : "I didn't see the plaintiff on April 7, 1898. I was not in Rome that day. I didn't tell him, on the street near the Norton corner, that I wanted him to buy this note. I did sign the certificate dated Early, Ga., April 7, 1898, because I thought I had full titles to the counties that he had sold me and for which I gave notes, and because I expected him to come and comply with his contract by traveling with me and selling the six counties in lower Georgia. I never saw the plaintiff about this note, nor knew that he had it until I got a letter from him in November, 1898, saying that he had traded for it. When I got his letter, I came to Rome to see him. He then tried to make me say that I had had the conversation with him on April 7, 1898, about this

note. I at that time told him I had had no such conversation, and that I didn't even know he had the note until I got his letter in November, 1898. The certificate held by the plaintiff, dated Early, Ga., April 7, 1898, was signed by me on that day, but at Coosa, Ga., in the presence of Gregory, who went home with me and spent the night. Neither Gregory nor I was in Rome on that day after that paper was signed, and I was not in Rome at all on that day." The plaintiff testified: "On April 7, 1898, I met the defendant on Broad street in Rome, near Norton corner, about noon. He told me the note was all right, and that he wanted me to buy it, as it would be a favor to him. After this conversation I traded for the note, giving therefor a horse and buggy. I would not have made the trade but for the conversation I had with Mr. Smith and the certificate of April 7, referred to, which I had in my possession, and which the defendant admitted signing before I traded for the note. This certificate was brought to me by Gregory before I saw defendant, and I took it and the note and hunted up defendant and showed them to him, and he told me they were all right, and wanted me to buy the note." Plaintiff read in evidence the certificate signed S. W. Smith, dated Early, Ga., April 7, 1898, stating that on or about March 16, 1898, he gave his note to Q. T. Gregory for a patent right, that he expected to pay it when due, that he had value received therefor, and that he was willing for Gregory to sell or trade it. George Ramey, for plaintiff, testified: "On April 7, 1898, Gregory came to our stable to trade the note sued on, for a horse and buggy. We declined to take the note at first, but afterwards did trade Gregory a horse and buggy for the note." Defendant read in evidence two papers called "Assignment of Territory," the first dated January 13, 1898, and signed Q. T. Gregory, by J. R. Oglesby, atty., consideration $125, grantee S. W. Smith, wherein is conveyed to grantee all right of Floyd county under patent 476,127, issued to Charlie Cardwell for improvements in gates and automatic latcher; the other dated April 7, 1898, signed Q. T. Gregory, consideration $300, grantee S. W. Smith, wherein is conveyed to grantee all of a one-half interest in said patent for the counties of Pike, Upson, Talbot, Taylor, Marion, Macon, and Bartow.

*Dean & Dean*, for plaintiff in error.   *M. B. Eubanks*, contra.

FISH, J.   There was no error in the judgment of the court sustaining the demurrer to so much of the plea as set up that the note sued upon was illegal and void.   The note was not void, although it failed to comply with the act approved Dec. 21, 1897.   (Acts 1897, p. 81.)   A failure to comply with the requirements of that act, by expressing in the face of a note or contract given for the purchase-price of any patent right, or territory for the sale of such right, the consideration, stating the thing or article for which the same was given, does not render the note or contract void, but makes the seller, who takes such note or contract, guilty of a misdemeanor.   Had the purpose of the legislature been to render void every note and contract for the purchase of a patent right, which failed to express upon its face the consideration and the particular thing or article for which it was given, doubtless the act would have declared such notes or contracts to be illegal and void.   Instead of doing this, however, the act imposes upon the seller of a patent right, who takes a note or contract for the purchase-money of the same, the legal duty of expressing in the note or contract the consideration of the same, and makes his failure to do so a misdemeanor; and further provides that when the consideration is expressed in the writing as required by the act, any one who purchases the note or contract shall take it subject to all the equities existing between the original parties.   It is true that the title of the act, after stating the requirements of the act in reference to such notes and contracts, does indicate a purpose to declare void all notes and contracts which fail to comply therewith, but there is nothing in the act itself which declares them to be void, nor is there anything which indicates an intention to render them void.   If the meaning of the act itself were doubtful, resort might be had to the title, in order, if possible, to resolve the doubt.   But as the provisions of the act are clear and unambiguous, it is neither necessary nor proper to resort to its title in order to ascertain its meaning.   Counsel for plaintiff in error contend that the note is void, "because based upon a crime," and in support of this contention cite *Kleckley* v. *Leyden*, 63 *Ga.* 215, *Johnston* v. *McConnell*,

65 *Ga.* 129, and *Conley* v. *Sims & Blalock*, 71 *Ga.* 161.   It is undoubtedly true, from these decisions, that a note based upon an illegal consideration is void, even in the hands of a bona fide holder thereof.   In each of the cases cited the note involved was founded upon an illegal consideration, having been given for the purchase-price of commercial fertilizers which had not been inspected, branded, and tagged as required by law.   The law made it a crime to *sell* such fertilizers.   A note given for something the sale of which the law absolutely prohibits and makes penal is based upon an illegal consideration, and is consequently void in the hands of any holder thereof.   The thing for which the note is given is outlawed, and the note standing upon such a foundation is outlawed also.   There is a wide difference between those cases and the one now under consideration.   In the present case the consideration for the note was perfectly legal.   It is not illegal to sell a patent right.   The crime consists, not in the sale of the patent right, but in the failure of the seller to express in the note the article or thing which forms its consideration.   The note in question was not "based upon a crime;" if it had been, no matter how it might have been written, or with what particularity it described the consideration, it would have been void.   The consideration of a note given for a patent right may be perfectly legal, and the maker of the note may have even received full value for the note, and yet the seller of the patent right may have violated the law by not properly expressing in the note the consideration for which it was given.   It is one thing to sell an article the sale of which the law prohibits and makes penal; it is quite another thing to sell an article the sale of which is perfectly lawful, and to violate the law by taking a note for the purchase-money which does not properly express the consideration for which the note was given.   In the one case the consideration upon which the contract is based is illegal; while in the other the consideration of the contract is perfectly legal.

2. The only other ground to be considered is, whether, as alleged in the motion for a new trial, the judgment was contrary to the evidence.   The court tried the case without the intervention of a jury, and rendered judgment in favor of the plaintiff for the full amount of the note.   Was this judgment con-

trary to the evidence? The only defense to the merits was the plea of partial failure of consideration. This plea was not stricken, and the question to be considered is, did the defendant, as against the plaintiff, sustain this defense? Failure of consideration is no defense against one who purchases a negotiable instrument before its maturity, unless at the time of the purchase he knew, or had reasonable grounds to suspect, that the consideration had failed. The note, while not complying with the statute by stating the particular thing for which it was given, did show that it was given for a patent right. While it is only when the consideration of a note given for the purchase of a patent right "is expressed in the face thereof as is provided in section 1" of the act of 1897, that the note carries upon its face such notice of its consideration as necessarily subjects any one who purchases the note before its maturity to the equities which may exist between the original parties, in view of the policy of the law, as shown by the act of 1897, with reference to notes given for the purchase of patent rights, it may be that the statement of the consideration in this note was sufficient to put a prospective purchaser upon inquiry as to its consideration and what equities, if any, might exist between the maker and the payee. Granting this to be true, we are of opinion that, under the evidence, the defense of partial failure of consideration was not available as against the plaintiff. It appears from the testimony of the defendant himself that "the consideration for the note sued on was a patent right for a gate, for the counties of Floyd and Bartow." On January 13, 1898, he bought the right for Floyd county for $125, for which amount he gave his note. Afterwards he purchased of Gregory the right for Bartow county, for which he was to pay $75. Gregory "said he would destroy the note and deed that had been executed in January, and give [the defendant] a deed to Bartow and Floyd together." The note sued on was executed on the 16th of March, 1898, and it may be inferred from the defendant's testimony — he nowhere expressly states it — that its consideration was the right to the patent for both Floyd and Bartow counties. According to the agreement, the note should have been for only $200, instead of $210. The consideration for this note has partially failed, because Gregory failed to convey to the

defendant the right to Bartow county. · On April 7, 1898, which was more than three weeks after the note sued on was executed, the defendant gave to Gregory, who then held the note, a certificate stating that he had given the note to Gregory for a patent right, "that he expected to pay it when due, that he had value received therefor, and that he was willing for Gregory to sell or trade it." So much appears from the defendant's own testimony. Gregory presented this certificate to the plaintiff before the plaintiff traded for the note. At the time that the defendant gave this certificate to Gregory he was obliged to have known that he had received no conveyance of the right for the county of Bartow. The "deed," to use his expression, which he had received when he purchased the right for Floyd county, covered only Floyd county, and this he knew. He testified that Gregory "said he would destroy the note and deed that had been executed in January, and give me a deed to Bartow and Floyd together, and this I thought he had done until I came to look at the papers last December, when I found I had only the papers I got in January, 1898, which only called for Floyd." It is extremely difficult to conceive how the defendant could have thought that Gregory had destroyed the conveyance of the patent right for Floyd county, which the defendant *still* retained in his possession, and had given to him another conveyance covering both Floyd and Bartow counties, when Gregory had given to him no paper of any kind from the time that the defendant had received the conveyance covering only the right to Floyd county until April 7, when he purchased of Gregory a half-interest in six other counties. The defendant himself testified that the only papers he got were the one covering Floyd county, which he received in January, and the one given him when he purchased the half-interest in the six counties, and that he "did not know that Bartow had been stuck in the last paper." It would be an insult to his intelligence, therefore, to believe that he did not know of the partial failure of consideration for the note sued on, on April 7, 1898, when he signed the certificate which Gregory used in inducing the plaintiff to purchase the note. After ample opportunity to know that there had been a failure of consideration in the respect alleged, he, over his own signature, said—in effect to all whom it might concern—that he gave

this note tb Gregory for a patent right, "that he expected to pay it when due, that he had value received therefor, and that he was willing for Gregory to sell or trade it;" and this written statement of the defendant was presented by Gregory to the plaintiff, who was thus induced to exchange valuable property for the note.    Irrespective, therefore, of the plaintiff's testimony in reference to the conversation which he testified he had with the defendant before the purchase of the note from Gregory we think that the defendant was estopped from setting up failure of consideration against the plaintiff.   Greenhood, Pub. Pol., Rule 10.

*Judgment affirmed.    All the Justices concurring.*