### 697. LEE *v.* HIGHTOWER.

1. The act of 1897 (Acts 1897, p. 82-3) does not restrict or abridge the right of the defendant, in an action brought by the transferee of a note, to plead that the plaintiff is not an innocent purchaser, but purchased the note with full knowledge of all the equities between the original parties; nor does it prevent him from pleading and proving that the holder never purchased it, provided the defendant has a good defense against its payment.

2. Nor does this statute require a more definite description of the article or thing sold (the purchase-price of which is the consideration of a note given for a patented article or a patent right) than such an explicit statement that the thing sold is patented, or is a patent right, as will put a prospective purchaser of the paper on notice and at the same time enable him, by the exercise of ordinary care and diligence, to obtain, if he desires, further information as to the nature and character of such article.

3. That one is the purchaser of a note which evidences indebtedness for the purchase-price of a patent right, before maturity and for value, does not affect the operation of the act of 1897. The policy of the State recognizes no innocent purchasers if the note is properly identified as having been given for a patent right, or any interest in a patent.

Complaint, from city court of Dublin—M. H. Blackshear, judge pro hac vice. June 27, 1907.

Submitted November 26,—Decided December 9, 1907.

*J. S. Adams,* for plaintiff in error.    *I. S. Chappell,* contra.

RUSSELL, J. Hightower sued Lee on a promissory note. The court refused to allow the amendment which the defendant offered, to his plea, struck the plea of the defendant already of file, and entered judgment as in case of default, in favor of the plaintiff, for principal, interest, attorney's fees, and costs. We are satisfied that the court erred in both rulings. The judgment must therefore be set aside, the amendment of the defendant be allowed, and a new trial be had.

The note sued upon, so far as now material, is as follows:

"$125.00.   Dublin, Ga., Dec. 14, 1904.   On or before the 14th day of March (fixed) we promise to pay to I. N. Hollingsworth, or order, the sum of one·hundred and twenty-five dollars, value received.   This note given for patent right No. 771015, patented Sept. 27, 1904."   In addition the note contains waivers of certain exemptions and a provision for attorney's fees.   Endorsed upon the note is the following transfer from Hollingsworth, the original payee, to the plaintiff.   "I hereby transfer the within note to M. J. Hightower without recourse on   me.   March 2, 1905.   I. N. Hollingsworth."   The defendant pleaded, among other things, total failure of consideration, and fraud in the procurement of the note. In the amendment to his plea, which the court refused to allow, he set up that the plaintiff was not an innocent purchaser without notice, but that he bought the note with full, actual knowledge of the fact that it was wholly without consideration; and further, that the plaintiff had never in fact purchased the note,—had paid nothing for it, and had no interest in it except to aid in the fraud of the original payee.

Unless the defendant had a meritorious defense which he would otherwise be debarred from presenting, it was of no concern to him whether the holder had a title; but as to one who claims to be a purchaser in good faith for value before maturity, it can always be shown,—in order to open the way for a defendant's meritorious defenses, that the holder is not an innocent purchaser or that he purchased the paper after maturity.   We presume, therefore, that the court disallowed the amendment upon the ground that the plea presented no defense.

The answer and plea were stricken on plaintiff's oral motion, upon the sole ground, as stated by the judge in his order, that "said note being given for a patent right, the consideration expressed in the face of said note is not such a compliance with the act of 1897 as will permit the defendants to set up the facts contained in said plea, against the transferee."   It is certified by the trial judge that the amendment was offered before the order striking the plea was granted, though after the motion to strike was made.   We think the amendment should have been allowed irrespective of the act of 1897 (Acts 1897, p. 152).   So far as the rights of the defendant are concerned, that statute was not intended to diminish in any wise the existing defenses which were

the right of makers of promissory notes. On the contrary, the manifest purpose of the act was to extend and enlarge the rights of defendants, by adding an entirely new defense, though making it possible that the rights of bona fide purchasers might be abridged. The act of 1897 simply declares that if the consideration of a note is a patent or patent right, and is so expressed therein, the holder can never be an innocent purchaser so as to exclude "equities existing between the original parties." This is a provision expressly beneficial to the maker and detrimental to and in derogation of the rights of the holder of such a note, although the holder may have purchased the note in good faith before its maturity. But certainly there is nothing in the act tending to take from a defendant the right, always previously accorded him by law, of showing, if he can, that the holder is not an innocent purchaser, and is subject to all the equities existing between the original parties, because he bought the paper with full knowledge of the facts. The defendant's amendment should have been allowed without regard to the act of 1897.

In our opinion the court erred in sustaining the motion to strike the defendant's plea upon the ground that, the consideration of the note being for the purchase-price of a patent right, the article or thing was not sufficiently described and that therefore the defendant could not set up his defense. Section 1 of the act of 1897 (Acts of 1897, p. 81) reads thus: "Be it enacted . . that from and after the passage of this act all promissory notes, contracts, or other evidence of debt, taken by any person, agent, company, or corporation, for the purchase-price of any patent, copy or proprietary right, or territory for the sale of any such right, or for the sale of any patented article or thing, or copyrighted article or thing, or where there is a proprietary ownership or right, and sold by such person, agent, company or corporation, through or by any peddler, agent, or traveling salesman, traveling for the purpose of making such sales, shall have expressed on the face of such note, contract, or other evidence of debt, the consideration of the same, stating the thing or article for which the same was given." The statement in the note, descriptive of "the thing or article for which the same was given," is, "This note is given for patent right No. 771015, patented Sept. 27, 1904." We think this is ample to express the "thing" which is

the consideration of the note. The exact point as to what is a sufficient description or identification of the articles referred to in the act of 1897 has not heretofore been expressly decided, but we have no doubt as to the sufficiency of the description in this case, when we consider the purpose of the lawmakers in the passage of that act.

We agree with the learned counsel as to the rule by which the act of 1897 should be construed, though we reach a different conclusion. The rule is elementary, but the expression of counsel for the defendant in error is so apt that we quote from his brief. "As to the construction of the act of 1897, we must look to the old law, the evil, and the remedy. The old law was that the same protection was thrown around bona fide purchasers before maturity, for value and without notice, of patent-right notes, as purchasers of all other kind of notes; the evil was that unscrupulous persons foisted upon unsuspecting farmers and others worthless articles, for the purchase of which they took notes, and immediately, at a great discount, sold them to innocent purchasers before maturity; the remedy which the law prescribed was to make it a misdemeanor for a person of this kind to take a note for a patent right without stating in the face of the note the article or thing for which it was given; and the additional remedy upon the purchaser was, that if he should buy such a note with this consideration expressed on its face, he took it subject to all equities between the original parties." We add that the main purpose was to so mark this class of notes that, if possible, purchasers would hesiitate to buy them *even before maturity;* and thus, behind that was the purpose to protect, if possible, those of our population who are too gullible, both by decreasing the number of such purchases (generally of worthless articles) and by affording, to those so unwary as to be caught, rights which, as to bona fide purchasers, are not allowed to any other class.

Counsel for defendant in error insists that the statute should be strictly construed because innocent purchasers are favorites of the law. Generally this is true. But the act of 1897 preferred the poor prodigal son, who fain would fill himself with "the husks which the swine do eat" (in the form of patent rights), rather than the elder son,—innocent purchaser,—and if the prodigal has a plea which will enable him to find his way home, he may, by

the aid of the evidence, be able to enjoy "the fatted calf" in the form of a verdict, while the elder son, Mr. Innocent Purchaser, would have no just cause for complaint. In considering whether the description in notes of the kind referred to in the act of 1897 is sufficient, it should not be forgotten—for it is a matter of common knowledge—that these notes generally (doubtless it is true in the present case) are made on a printed form prepared and proposed by the payee, and, if in his hands or in the hands of one who bought with full knowledge of the facts relative to the transaction, should be construed more favorably to the maker. If, where a suit is brought by the payee upon one of such notes, there be doubt whether the patented thing sold is sufficiently expressed or described in the note, if it appears that the note was prepared by the seller the doubt should be solved in favor of the maker of the note. In such an event either the payee or the maker is likely to suffer; and the payee having been the cause of the doubt, it would manifestly be unjust to hold the maker responsible for the act of the payee. Should any other rule be adopted, it would generally be within the power of persons selling patent rights or patented articles (provided only they are willing to risk the chances of prosecution) to so frame the description that if the note can be sold before maturity, the maker will be powerless to defend, no matter how greatly he may have been wronged.

We hold that the description of the article or thing sold meets the requirement of the act of 1897, whenever the instrument which evidences an indebtedness for the whole or a part of the purchase-price of a patented article (or of any right or interest connected with or accruing from a patent) contains such an explicit statement that the thing sold is patented, or is a patent right, as puts a prospective purchaser of the paper on notice, and at the same time enables him, by the exercise of ordinary care and diligence, to obtain further information as to the nature and character of the article. To require a minute description of many of the thousands of the articles patented would be impracticable. The rule we have announced is certainly fair and in accord with the intention of the legislature. The description in the note in this case measures up to the requirement. In its care for innocent purchasers the intention of the legislature was to protect them by making the note a storm signal, notifying any one inclined to buy

a patent-right note that none of the favor and assistance allowed to purchasers of other notes would be his, and that in any conflict between the maker and himself he must carry all the payees's burdens as well as his own. We know of no better way in which notice can be given than to say in the face of the note, "This note is for a patent right. Beware! If you want more knowledge, here is the patent number and the date the grant was made." Counsel for defendant in error cites the cases of *Hatcher* v. *National Bank,* 79 *Ga.* 542 (5 S. E. 127), *Walters* v. *Palmer,* 110 *Ga.* 776 (36 S. E. 79), and *Parr* v. *Erickson,* 115 *Ga.* 873 (42 S. E. 240). The well-known rule of law, that where a negotiable note payable at a future date is indorsed by the payee to the plaintiff, the presumption arises that the plaintiff took before maturity, for value and without notice, is announced in each of these cases. But none of these decisions furnishes any authority upon the question before us, nor does the principle, though sound in the abstract, affect the act of 1897. Nor is the case of *Smith* v. *Wood,* 111 *Ga.* 221 (36 S. E. 649), cited by counsel for defendant in error, in point, though the argument supports our holding. The specific point now before us is not decided in the *Smith* case. The intimation, however, is very strong that had the question been raised as to the sufficiency of the description of the article sold contained in the note, the court would have held that the mere words "for a patent right" were enough to inform the purchaser of the note in compliance with the act of 1897. Only two things were expressly decided in the *Smith* case: first, that not even complete failure to state the thing or article sold in a note given for a patent or patent-right renders the note *void;* and secondly, that under the evidence in that case, the defendant was, by his own admissions, estopped from setting up his plea of partial failure of consideration. But while the court puts its decision on only two points in the case, the following very significant language (used while discussing the plea of failure of consideration, which was controlling) is found on page 227 of the opinion. "The note, while not complying with the statute by stating the particular thing for which it was given, did show that it was given for a patent right. While it is only when the consideration of a note given for the purpose of a patent right 'is expressed in the face thereof as required in section 1' of the act of 1897, that the note

carries upon its face such notice of its consideration as necessarily subjects any one who purchases the note before its maturity to the equities which may exist between the original parties, *in view of the policy of the law, as shown by the act of* 1897, *with reference to notes given for the purchase of patent rights,* it may be that the statement of the · consideration in this note was sufficient to put a prospective purchaser upon inquiry as to its consideration and what equities, if any, might exist between the maker and the payee. Granting this to be true, we are of opinion that, under the evidence, the defense of partial failure of consideration was not available as against the plaintiff." The Supreme Court thus recognizes that there is a wise policy (established by the act of 1897), with reference to notes given for the purchase of patent rights and patented articles, in the interest of those who are so easily deceived and imposed upon as that they would seem to need the guardianship of paternalism in government.                    *Judgment reversed.*